MACOMBER, J., concurred ; CORLETT, J., not sitting.

Judgment appealed from affirmed.

————————

IN THE MATTER OF THE JUDICIAL SETTLEMENT OF THE ACCOUNTS OF FRANK A. TEED, AS ADMINISTRATOR, WITH THE WILL ANNEXED, OF LEWIS B. GRANT, DECEASED.

*A residuary legatee and devisee limited under chapter 360 of 1860 to one-half the estate — is to take equally from real estate and personalty — life estate, how deducted to show the value of the estate under chapter 360 of 1860.*

A testator, after giving a life estate to his wife, provided, by his will, as follows: "I give, bequeath and devise to the New York Baptist Union for Ministerial Education, located at Rochester, New York, for the endowment of the Rochester Theological Seminary, all the rest, residue and remainder of my property and estate, both real and personal."

The executors named in the will sold certain of the real estate under a power of sale contained therein, and upon the settlement of their accounts the surrogate adjudged that the sum payable to the New York Baptist Union should be paid entirely out of the avails of the personal property left by the testator, and no part of it from the proceeds of the sale of the real estate.

*Held,* that, for the purpose of determining the amount which the New York Baptist Union was entitled to receive (so as not to exceed one-half of the value of the estate within the meaning of chapter 360 of the Laws of 1860), the value of the estate was to be determined at the time of the death of the testator, deducting the value of any life interest created in the estate by the testator.

That where, before such question is determined, the life interest has ceased, the value of such life interest is to be determined by the actual duration of the life, and not by a reference to the annuity tables showing what the probable duration of such a life would be.

*Hollis* v. *Drew Theological Seminary* (95 N. Y., 166) distinguished.

That, in the case of any increase of the estate during the period after the death of the testator, the New York Baptist Union was entitled to one-half thereof, and if there was no increase, then, by an allowance of a reasonable amount for the loss of the use of such property during the continuance of the life tenancy, or on the basis of the loss of interest, the New York Baptist Union should be made as good, in respect to the estate, as though it had, less the expenses of administration, etc., received one-half of the whole property at the time of the death of the testator.

That the surrogate erred in directing the entire amount payable to the New York Baptist Union to be paid out of the proceeds of the personalty, and that the New York Baptist Union should have been paid not to exceed one-half of the testator's estate, as limited by chapter 360 of 1860, one-half from the personal property and one-half from the proceeds of the real estate.

That the provision of the will relating to the bequest and devise to the New York Baptist Union, to the effect that it was "for the endowment of the Rochester Theological Seminary," was too indefinite to create a trust, and was simply the expression of a strong desire on the part of the testator that the fund so given to the New York Baptist Union should be used for one only of the many objects for which that corporation was created, namely, the support of this theological school.

APPEAL by David S. Forbes, John B. Forbes, and Elias Forbes, individually and as administrator of the goods, etc., of Julia A. Grant, deceased, upon questions of law and of fact, from a decree of the Surrogate's Court of the county of Chautauqua, entered in the above-entitled matter on the 25th day of November, 1889, settling the accounts of Frank A. Teed, as administrator, with the will annexed, of Lewis B. Grant, and decreeing a distribution of the proceeds of said estate in the hands of the administrator.

*George Barker*, for the appellants.

*M. H. Briggs*, for New York Baptist Union for Ministerial Education, respondent.

*Lorenzo Morris*, for Susan Maria Ellis and others, heirs-at-law of Lewis B. Grant, deceased and Frank A. Teed, Administrator, respondents.

MACOMBER, J.:

Lewis B. Grant died on the 16th day of March, 1884, leaving a last will, by which, after the payment of debts and the defraying of the expense of a family monument, he gave absolutely to his wife all his household goods and effects and personal adornments, and also the use of all of his real estate and personal property during

her natural life. The will also contained a provision for the payment of an annuity of $100 to the testator's brother, Henry D. Grant; but this provision is of no moment on this appeal, because the beneficiary died before the time when such annuity, by its terms, should begin to run. The testator gave to the Cook Academy, located at Havana, N. Y., the sum of $1,000, payable in one year from the death of his wife.

The eighth clause of the will is as follows:

"I give, bequeath and devise to the New York Baptist Union for Ministerial Education, located at Rochester, New York, for the endowment of the Rochester Theological Seminary, all the rest, residue and remainder of my property and estate, both real and personal."

The last named legatee and devisee was charged with the duty of maintaining, at its own expense, a cemetery lot in Fredonia, at a cost not to exceed three dollars a year. The executors were empowered to sell and convey any part of the real estate. The widow and one Mr. Warren were named as executors, but letters testamentary were issued to the widow alone, upon whose death, in the year 1887, letters of administration, with the will annexed, were issued to the respondent Teed.

The personal estate of the testator was inventoried at the sum of $20,896.67, and the real estate, which was sold by the executor under the power contained in the will, was of the value and netted the sum of $3,700, making in all, of real and personal property, the sum of $24,596.67. The other personal property not inventoried netted the sum of $122.89, and the amount of property set aside for the benefit of the widow, and not inventoried under the statute, was $150, making an estate of both real and personal property of $24,869.56. The debts amounting to $6,863.40.

The principal question upon this appeal relates to the amount of the bequest and devise given to the New York Baptist Union for Ministerial Education, under chapter 360 of the Laws of 1860, by which it is prohibited to a person to devise and bequeath more than one-half of his estate to corporations of this description, where there remain either descendants, or wife, or father or mother of the testator.

By the decree of the surrogate, after paying the expenses of administration of the estate, the sum of $9,092.25 was adjudged to be the amount payable to the New York Baptist Union for Ministerial Education, being one-half, according to the figures of the surrogate, of the whole estate, less the sum of $1,000 bequeathed, and theretofore paid by the administrators, to the Cook Academy. This sum was adjudged to be paid entirely out of the avails of the personal property left by the testator, and no part of it came from the proceeds of the sale of the real estate.

In this respect we think that the learned surrogate made an error. The property given to the New York Baptist Union for Ministerial Education consisted of both real and personal property, and covered the whole of the residuum of the estate after the life of the widow. We do not perceive upon what principle the half of the entire estate was so adjudged to be paid exclusively from the personal property.

The general rule undoubtedly is, as the cases cited by the learned counsel for the respondents hold, that ordinarily bequests are payable out of the personal estate if there is sufficient thereof. But there is no authority for holding that a devise of real estate shall be apportioned out of the personal property. The rule that should have governed the surrogate is, that the respondent, the residuary legatee and devisee, was entitled to receive one-half of the personal property and one-half of the real estate.

Much discussion has been devoted to the amount of money to which, under the statute already referred to, the residuary legatee and devisee was entitled. That is to be determined in this proceeding by the value of all the property bequeathed and devised, as the same was valued at the time of the death of the testator, as is well adjudged in the case of *Hollis* v. *The Drew Theological Seminary* (95 N. Y., 166). By that authority, in so far as the same is applicable to any question arising on this appeal, it was decided in an action brought, not for the distribution of the estate, but for the construction of the will, and before any time for distribution had arrived, that the value of the life interest must be taken into account in determining whether or not a certain sum bequeathed was or was not more than one-half the value of the estate within the meaning of chapter 360 of the Laws of 1860. It was stated there, in the

elaborate opinion of Judge EARL, that the calculation upon which the judgment rested contained an element of uncertainty as to the duration of the lives of the persons having a life estate. The court says: "The value of the estate in a case like this must be determined at the death of the testator, and that must be ascertained by the help of annuity tables, and such other means as are in any case available. There is no present uncertainty in the value thus ascertained for the purpose of sale, purchase or legal administration. The life of the annuitant may turn out to be longer or shorter than the years given in the tables used, but that is a future event then unknown, and does not enter into any calculation of present value in such a case."

That was a case dealing in uncertainties; in the case before us there is no uncertainty, because the proceeding is for the final distribution of an estate after the death of the annuitant, the length of whose life is accurately known.

The learned counsel for the respondents has made his claim, and, so far as we can ascertain, the surrogate has substantially held with him, by adding to the estate for the purpose of distribution what might be deemed to be an incumbrance thereon by virtue of the life interest given to the widow for a period to be determined by the Northampton tables, which show that the widow, at the time of the death of the testator, had a prospect of life of about nine years. On the other hand, the counsel for the appellants has given an estimate, based neither upon such prospect of life nor upon the actual value of the property less the debts of the decedent.

In estimating the one-half of the value of the property to be received under this will by the New York Baptist Union for Ministerial Education, a result must be reached, not by the value of the property at the time of the death of the decedent, enhanced by the value of the life tenancy for the period given by the Northampton tables, or any other proper annuity tables, reckoned on her age at her husband's death, but must be determined in this manner: There should be added for the purpose of the calculation the value of that annuity, computed from the death of the testator, which was on the 16th day of March, 1884, to the death of the life tenant, which was on the 6th day of February, 1887, namely, for two years, ten months and twenty days.

Under the reasoning of *Hollis* v. *The Drew Theological Seminary* (*supra*), had it been known what the actual duration of the life tenancy would be, and not merely what it probably would be under proper annuity tables, the judgment of that court doubtless would have been a perfect guide to us on this appeal. There should be made a proper allowance for the value of the life tenancy for the two years, ten months and twenty days, and a credit should be given the estate for any increase thereof, whether by failure of the inventory to embrace all the personal property or otherwise.

In some form or other the residuary devisee and legatee is entitled to receive on this accounting one-half of the value of the personal and real estate as it stood at the time of the death of the testator, less the bequest to the Cook Academy. If there has been any increase of such estate during the period since his death, the residuary legatee and devisee is entitled to one-half thereof; if there has been no increase, then in some form, either by an allowance of a reasonable amount for the loss of the use of such property during the two years, ten months and twenty days, estimated on the basis of annuity tables, or on the basis of the loss of interest, the residuary legatee should be made as good, in respect to the estate, as though it had received one-half of the whole property at the time of the death of the testator, less the bequest to the Cook Academy. The uncollectible debts, together with all of the expense of administration, must, of course, be deducted in that computation. Though, we think, under section 2587 of the Code of Civil Procedure, we could pronounce an affirmative judgment on all the necessary facts before us, yet the record of appeal seems to be deficient in some particulars, so that in minor details we are not able to make a computation based upon the principles above stated. It follows, therefore, that the case must be returned to the surrogate of Chautauqua county for him to proceed in accordance with our view, unless counsel can agree upon the computation. In case of such agreement, the necessity of sending the case back to the surrogate may be avoided.

There remains to be considered but one other question, and that is the point made by the learned counsel for the appellants, that the trust attempted to be created by the residuary clause of the will is invalid for the reason that this provision is an attempt to make the residuary legatee a trustee for the benefit of the Rochester Theolog-

ical Seminary. The language of the will is, that this residuary bequest and devise to the New York Baptist Union for Ministerial Education, is "for the endowment of the Rochester Theological Seminary." There is before us no proof of the existence, as a corporation, of the Rochester Theological Seminary, nor of its powers or functions. The use of the word "endowment" in the will is extremely loose, if, indeed, it be true, as we suppose, that there is in reality no corporation by that name. The term, manifestly, has in this connection no meaning whatever, unless it be in the nature of the expression of a strong desire, on the part of the testator, that the fund so given to the residuary legatee should be used for one only of the many objects for which the real corporation was created, viz., the support of this theological school. The expression " for the endowment of the Rochester Theological Seminary " in this connection is meaningless under any definition that may be found, and it may safely be elided without detriment to the meaning of the will.

The fact, which is not shown in the appeal papers, but which was doubtless known to the testator, and which we, in common with the appellant's counsel, may well believe to exist, is that the New York Baptist Union for Ministerial Education does support and maintain a theological school at the city of Rochester, generally spoken of as "The Rochester Theological Seminary," but, we think, there is nothing in the will which would lend support to the ingenious argument of the learned counsel, that the purpose of the testator was to make the residuary legatee a trustee for the benefit of that seminary, as though the latter were an independent and separate corporation.

The decree should be reversed, with costs of this appeal to all parties, with direction to the surrogate to proceed in accordance with these principles.

DWIGHT, P. J., and CORLETT, J., concurred.

Decree of surrogate of Chautauqua county reversed, with costs of this appeal to all parties payable out of the fund, and the case remitted to the surrogate to proceed therein in accordance with the views expressed in the opinion.