In the Matter of the Judicial Settlement of the Accounts of
FRANK A. TEED, as Administrator, etc., of LEWIS B. GRANT,
Deceased.

*Value of a testator's personal estate — when the interest on the fund is prima facie
the value of a life estate therein.*

To ascertain, where a testator's residuary estate is left to a corporation, the value
of his personal property at the time of his death, the value of a life estate
therein created by his will must be measured.

Where the life estate has ended before the determination of its value there is no
occasion to do more than make it appear what was, in fact, its value.

In such case, if nothing appears to the contrary, the interest upon the amount of
the fund received by the life beneficiary will *prima facie* represent the value of
the life estate.

APPEAL by the New York Baptist Union for Ministerial Educa-
tion from a decree of the Surrogate's Court of the county of Chau-
tauqua, entered in the Chautauqua County Surrogate's Court on the
4th day of March, 1892, settling the accounts of the administrator,
decreeing a distribution of the proceeds of said estate, and directing
restitution of moneys paid the appellant under former decrees made
by such Surrogate's Court.

*Marsenus II. Briggs*, for the N. Y. Baptist Union, appellant.

*George Barker*, for Frank A. Teed, administrator, and others,
respondents.

BRADLEY, J. :

The testator, Lewis B. Grant, died May 16, 1884, leaving his will,
which was admitted to probate. By it he gave to his wife his house-
hold furniture, and devised and bequeathed to her the use of his
estate, real and personal, during her life.

He gave to his brother, Henry D. Grant, an annuity of $100, from
and after the death of his wife.

He gave to the Cook Academy an endowment of $1,000, payable
in one year after the death of his wife.

He devised and bequeathed to the New York Baptist Union for
the endowment of the Rochester Theological Seminary all the resi-
due and remainder of his estate, real and personal, and charged such

Baptist Union with the expense of taking care of his cemetery lot in Fredonia, N. Y. His wife survived him and died intestate February 6, 1887. His brother Henry did not survive her.

A prior decree of the surrogate settling the accounts was, on review, reversed and resettlement directed. (59 Hun, 63.)

The controversy now has relation only to the personal estate. The two institutions mentioned in the will can take only one-half in value, as of the time of the death of testator, of the estate. (Laws 1860, chap. 360.) The value of the personal estate, as represented by the inventory and appraisal made after his death, was $20,896.67, to which may be added for that not included in the appraisal, $272.89, making together $21,169.56. There was no judicial settlement completed during the life of the widow, to whom letters testamentary were issued. The debts of the testator as of the time of his death amounted to $6,977.52. The expenses of the proceedings had for the accounting, as allowed, were $1,821.02. And the interest received by the widow upon the personal assets amounted to $2,642.04.

In the settlement made by the decree of the surrogate the appellant was allowed the benefit of the interest upon one-half of the net value of the personal property from the time of the death of the testator to that of the widow. The sum for interest so allowed was less than half the amount of the interest so received by her during that time. Upon this fact arises one question presented for consideration. To ascertain what the personal property was worth at the time of the death of the testator, the value of the life estate in it, which succeeded his death, must be measured. If it had not terminated when the division was sought it would have been determined by a certain known method of measurement. This was well illustrated by Judge EARL in *Hollis* v. *Drew Theological Seminary* (95 N. Y. 166).

But as the life estate had ended there was no occasion to do more than to make it appear what in fact was its value. In such case, if nothing appeared to the contrary, the interest upon the value of the personal estate so held would *prima facie* represent it. Here the fact appears that the amount of interest received by the widow upon the personal assets was greater than the interest upon the value of the personal estate remaining after deducting the debts

and expenses as the computation was represented by the decree of the surrogate.

The interest so received by her issued out of the personal estate which came to her use, and the amount thus by her derived from it during her life should be treated as the value of the life estate, and the institutions should have the benefit of one-half of it to realize one-half of the personal estate of the testator as of the time of his death.

It is urged on the part of the appellant that the inventory before mentioned as made determines the value of the personal property at the time of the testator's death, because, as it is insisted, there is no satisfactory evidence to the contrary.

It may be true that an inventory regularly made, as this was, is *prima facie* correct in respect to value as well as quantity of the property. (*Stewart's Appeal*, 110 Penn. St. 410.) In the present case it concededly appeared on the accounting that of the accounts and claims in the inventory, there were those amounting to $2,804.09 uncollected and uncollectible. And while the proceeding for settling the accounts in which this was made to appear was instituted nearly two years after the death of the widow, it may be observed that such then deficiency in value, in view of the nature of the accounts and circumstances which may be inferred, furnished some evidence of their available value as of the time of the death of the testator, and they should be treated as having no such value at that time. The result of these views is that the two institutions should have of the personal estate $6,104.97; instead of $5,974.59, as determined by the decree, and after deducting the $1,000 to which the Cook Academy is entitled there remains for the appellant $5,104.97, to which should be added for taking care of the cemetery lot before mentioned, the sum of fifty dollars, agreed upon by the parties for that purpose, making together $5,154.97.

It is also urged that the appellant is entitled to interest upon its share in the personal estate from the time of the death of the widow until that of the former decree, November 25, 1889. No reason for this seems apparent upon the facts in the record. It appears that some time prior to October, 1885, the widow as executrix instituted proceedings before the surrogate for a judicial settlement

of her accounts, and this proceeding does not seem to have been fully concluded; that after her death the administrator of her estate in May, 1887, instituted proceedings for the judicial settlement of his accounts, which resulted in the decree of the surrogate directing him to hand over to the administrator with the will annexed of Lewis B. Grant, deceased, all the personal estate of the latter which came to his hands and any moneys he had received thereon. He did so, and this included substantially all the personal estate left by him, and it was the subject of the accounting in question. This estate consisted mainly of choses in action, and any interest which had accumulated and been uncollected was in the property so delivered to the representative of the testator, and became the subject of the judicial settlement finally made by the surrogate, and whatever was collected by the latter went into his account soon after presented on application for judicial settlement, which was finally determined. The proceedings occupied some time. No satisfactory reason appears for allowing interest under the circumstances after the time of the death of the widow. The estate after that time was subject to no use. The right and duty then arose to have the estate settled and its proceeds distributed, and during that period any appropriation of it or its proceeds or income for any purpose other than its preservation was not permissible.

These views lead to the conclusion that the surrogate's decree should be so modified as to award to the appellant from the personal estate the sum of $5,154.97, and to reduce accordingly the amount directed by the decree to be paid to the respondent, Elias Forbes, as administrator, etc., of Julia A. F. Grant, deceased. And that such other modification only of the decree be made as may be necessary to conform it to the views above mentioned, with costs to the appellant payable out of the entire fund which is the subject of the division between the parties and derivable from the personal estate of the testator.

DWIGHT, P. J., LEWIS and HAIGHT, JJ., concurred.

Decree of Surrogate's Court of Chautauqua county appealed from modified as indicated in the opinion, with costs to the appellant payable out of the estate. Decree to be settled by BRADLEY, J.