(76 Hun, 567.)

### In re GRANT'S ESTATE.

### In re TEED. In re NEW YORK BAPTIST UNION.

(Supreme Court, General Term, Fifth Department. April 12, 1894.)

WILLS—LEGATEES—VALUE OF REMAINDER IN PERSONALTY.

　　Where testator gave the use of his estate to his widow for life, remainder to religious societies which, by Laws 1860, c. 360, could not take under the bequest more than one-half the value of the estate as of the time of testator's death, and the value of such half interest is not ascertained until after the widow's death, the amount of the profits actually received by the widow will be considered in estimating such value.

Appeal from surrogate's court, Chautauqua county.

Judicial settlement of the accounts of Frank A. Teed, as administrator with the will annexed of Louis B. Grant, deceased. From a decree settling the accounts of the administrator and directing distribution, the New York Baptist Union for Ministerial Education appeals. Modified.

Argued before DWIGHT, P. J., and LEWIS, HAIGHT, and BRADLEY, JJ.

Marsenus H. Briggs, for appellant.

George Barker, for respondent.

BRADLEY, J. The testator, Louis B. Grant, died May 16, 1884, leaving his will, which was admitted to probate. By it he gave to his wife his household furniture, and devised and bequeathed to her the use of his estate, real and personal, during her life. He gave to his brother, Henry D. Grant, an annuity of $100 from and after the death of his wife. He gave to the Cook Academy an endowment of $1,000, payable in one year after the death of his wife. He devised and bequeathed to the New York Baptist Union for the Endowment of the Rochester Theological Seminary all the residue

and remainder of his estate, real and personal, and charged such Baptist Union with the expense of taking care of his cemetery lot in Fredonia, N. Y. His wife survived him, and died intestate February 6, 1887. His brother, Henry, did not survive her. A prior decree of the surrogate settling the accounts was on review reversed, and resettlement directed. 59 Hun, 63, 12 N. Y. Supp. 642. The controversy now has relation only to the personal estate. The two institutions mentioned in the will can take only one-half in value, as of the time of the death of testator, of the estate. Laws 1860, c. 360.[1] The value of the personal estate, as represented by the inventory and appraisal made after his death, was $20,896.67, to which may be added, for that was not included in the appraisal, $272.89; making, together, $21,169.56. There was no judicial settlement completed during the life of the widow, to whom letters testamentary were issued. The debts of the testator as of the time of his death amounted to $6,977.52, the expenses of the proceedings had for the accounting as allowed were $1,821.02, and the interest received by the widow upon the personal assets amounted to $2,642.04. In the settlement made by the decree of the surrogate the appellant was allowed the benefit of the interest upon one-half of the net value of the personal property from the time of the death of the testator to that of the widow. The sum for interest so allowed was less than half the amount of the interest so received by her during that time. Upon this fact arises one question presented for consideration. To ascertain what the personal property was worth at the time of the death of the testator, the value of the life estate in it which succeeded his death must be measured. If it had not terminated when the division was sought, it would have been determined by a certain known method of measurement. This was well illustrated by Judge Earl in Hollis v. Seminary, 95 N. Y. 166. But, as the life estate had ended, there was no occasion to do more than to make it appear what in fact was its value. In such case, if nothing appeared to the contrary, the interest upon the value of the personal estate so held would prima facie represent it. Here the fact appears that the amount of interest received by the widow upon the personal assets was greater than the interest upon the value of the personal estate remaining after deducting the debts and expenses as the computation was represented by the decree of the surrogate. The interest so received by her issued out of the personal estate which came to her use, and the amount thus by her derived from it during her life should be treated as the value of the life estate, and the institutions should have the benefit of one-half of it, to realize one-half of the personal estate of the testator as of the time of his death.

[1] Laws 1860, c. 360, § 1, provides as follows: "No person having a husband, wife, child or parent, shall, by his or her last will and testament, devise or bequeath to any benevolent, charitable, literary, scientific, religious or missionary society, association or corporation, in trust or otherwise, more than one-half part of his or her estate, after the payment of his or her debts (and such devise or bequest shall be valid to the extent of one-half, and no more)."

It is urged on the part of the appellant that the inventory before mentioned as made determines the value of the personal property at the time of the testator's death, because, as it is insisted, there is no satisfactory evidence to the contrary. It may be true that an inventory regularly made, as this was, is prima facie correct in respect to value as well as quantity of the property. Stewart's Appeal, 110 Pa. St. 410, 6 Atl. 321. In the present case it concededly appeared on the accounting that of the accounts and claims in the inventory there were those amounting to $2,804.09 uncollected and uncollectible; and while the proceeding for settling the accounts in which this was made to appear was instituted nearly two years after the death of the widow, it may be observed that such then deficiency in value, in view of the nature of the accounts and circumstances which may be inferred, furnished some evidence of their available value as of the time of the death of the testator, and they should be treated as having no such value at that time. The result of these views is that the two institutions should have of the personal estate $6,104.97, instead of $5,974.59, as determined by the decree; and, after deducting the $1,000 to which the Cook Academy is entitled, there remains for the appellant $5,104.97, to which should be added, for taking care of the cemetery lot before mentioned, the sum of $50, agreed upon by the parties for that purpose, making, together, $5,154.97.

It is also urged that the appellant is entitled to interest upon its share in the personal estate from the time of the death of widow until that of the former decree, November 25, 1889. No reason for this seems apparent upon the facts in the record. It appears that some time prior to October, 1885, the widow, as executrix, instituted proceedings before the surrogate for a judicial settlement of her accounts, and this proceeding does not seem to have been fully concluded; that after her death the administrator of her estate, in May, 1887, instituted proceedings for the judicial settlement of his accounts, which resulted in the decree of the surrogate directing him to hand over to the administrator with the will annexed of Louis B. Grant, deceased, all the personal estate of the latter which came to his hands, and any moneys he had received thereon. He did so, and this included substantially all the personal estate left by him, and it was the subject of the accounting in question. This estate consisted mainly of choses in action, and any interest which had accumulated and been uncollected was in the property so delivered to the representative of the testator, and became the subject of the judicial settlement finally made by the surrogate, and whatever was collected by the latter went into his account soon after presented on application for judicial settlement, which was finally determined. The proceedings occupied some time. No satisfactory reason appears for allowing interest under the circumstances after the time of the death of the widow. The estate, after that time, was subject to no use. The right and duty then arose to have the estate settled, and its proceeds distributed; and during that period any appropriation of it or its proceeds or income for any purpose other than its preservation was not legitimately permissible. These

views lead to the conclusion that the surrogate's decree should be so modified as to award to the appellant from the personal estate the sum of $5,154.97, and as to reduce accordingly the amount directed by the decree to be paid therefrom to the respondent Elias Forbes, as administrator, etc., of Julia A. F. Grant, deceased, and that such other modification only of the decree be made as may be necessary to conform it to that before mentioned, with costs to the appellant, payable out of the entire fund which is the subject of the division between the parties, and derivable from the personal estate of the testator.