not notify the other persons who would be likely to bid, that "he did not care" to have them bidding on the property. It was a case where, unfortunately, the duty of the executor to his trust conflicted with his self-interest, and, rather than sustain an injury to himself, he sacrificed the welfare of his ward. Counsel for the moving party herein has elected to treat the transaction as a consummated sale, upon the executor being surcharged with what he regards to be a proper sum for the value of the stock; and this obviates the necessity of determining whether or not such stock was actually bought on behalf of the executor.

As the stock of this company was not dealt in generally, it is impossible to use any of the ordinary methods by which the stock of a corporation is valued; nor does a general examination of the condition of the company alone serve to fix the value of the stock, as it is apparent it was worth very much more than the aliquot proportion of the company which it represented, by virtue of the fact that its owner-ship would enable the executor, if he purchased the same, to control the corporation. It appears from the evidence that persons had stated they were willing to pay as high as $250 per share for this stock; and this, therefore, would be a fair sum to take as its value. If this value imposes any hardship on the executor, he must appreciate that the difficulty of determining the exact worth of the stock has been created by himself, and that, therefore, he is in the position of a man who has created a "confusion of goods," and should not be allowed to plead his own wrong in mitigation of the damages to be assessed against him.

The executor should therefore be surcharged with the difference of $150 per share on the 45 shares of stock as contained in the original accounting, and the decree settling such account should be amended accordingly. The provision awarding the executor costs and commissions in such decree should also be stricken out. The final account presented here for settlement should be approved, and the executor allowed his costs and commissions upon the same, except that he should not be allowed commissions upon the amount with which he is surcharged in the previous accounting. As the decree settling the final account will be the last act of the executor's official existence, it is unnecessary to pass upon the papers asking for his removal.

Decreed accordingly.

---

(55 Misc. Rep. 478.)

### In re RUNK.

(Surrogate's Court, Kings County. July, 1907.)

1. WILLS—CHARITABLE BEQUESTS—PORTION OF ESTATE.

    Testator gave the residue of his estate to his wife for life, and provided that at her death it should be converted into cash, making bequests thereof to certain individuals and charitable institutions. *Held*, that on the settlement of the executor's account, after the death of the life tenant the value of the life estate should be determined to ascertain whether the gifts to charitable institutions exceeded the statutory limit of one-half of his estate (Laws 1860, p. 607, c. 360) by the actual duration of the life estate, and not on a basis of the probabilities of its duration at the time of the testator's death.

**2.** SAME—INTESTACY.
Where there is a deficiency of assets to pay all the legacies in full, but an excess of assets over what could be given to charitable legacies under Laws 1860, p. 607, c. 360, there is no intestacy as to any such excess until after payment in full of all the valid legacies.

**3.** SAME—INTEREST ON LEGACIES.
Interest should be allowed on legacies from the death of life tenant to the date of payment.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 49, Wills, §§ 1847–1851.]

In the matter of the judicial settlement of accounts of Charles A. Runk, executor of William G. Talman. Decree rendered.

Lord, Day & Lord (Darius E. Peck, of counsel), for executor.
R. Percy Chittenden, for contestants.
Harry W. Acton, for Edward Newell.

DIKE, J. This controversy arises as to the proper method to be pursued by the executor upon the final accounting herein, especially in computing the value of the life estate and with particular reference to the law of 1860 relating to charitable bequests. William G. Talman died in the county of Kings on November 9, 1900, leaving a last will and testament, which was duly admitted to probate; and letters testamentary thereunder were duly issued to Charles A. Runk, who duly qualified. The testator left, him surviving, his wife, Frederika Talman, to whom he devised and bequeathed, after some few legacies, all his estate during her natural life, and at her death provided for a conversion of his entire estate into cash, making a large number of bequests to individual legatees and charitable institutions and corporations. The widow died in March, 1906. In accordance with the direction contained in the will, the executor sold the real estate, thus reducing all the estate to cash, and now seeks to make his final accounting.

Objection is made to the account by the contestants on the ground that Laws 1860, p. 607, c. 360, has been violated by the testator, in that more than one-half of his estate is given to charity. The account of the executor shows in his hands for distribution the sum of $66,644.83. There is a deficiency of assets to pay the legacies in full after making the separation of the estate under the plan adopted by the executor. The executor, therefore, has provided to abate the legacies, and, under the method of the computation adopted by him, his account shows that there is an excess of assets over and above what he can legally give to charitable legatees, and such excess amounts to $1,126.58. The contestants claim, under a different rule of computation, that the account should show a surplus undisposed of by the will, after setting apart one-half of the estate for the charitable legatees, of $3,145.48; and the contestants claim that this sum should go to the heirs at law, no deductions being allowed therefrom to meet the deficiency of assets or the charges of the estate. There are two questions presented to this court. Was the act of 1860 violated? and, what was the value of the life estate at the death of the testator?

In making the computations, the result of which is set forth in his account, the executor has followed the law as laid down in the case of Matter of Teed, 59 Hun, 63, 12 N. Y. Supp. 642, and also 76 Hun, 567, 28 N. Y. Supp. 203, which case was followed in Rich v. Tiffany, 2 App. Div. 25, 37 N. Y. Supp. 330. The contestants insist that the executor erred in so preparing his account and in fixing the value of the life estate, and hold that the case of Hollis v. Drew Theological Seminary, 95 N. Y. 166, should have been his guide. In my opinion the executor was correct. The Teed Case and the Tiffany Case were both decided after and with knowledge of the decision of the Court of Appeals in the Hollis Case, supra, and they clearly set forth the method to be pursued in determining the question of the value of the life estate such as the one now under consideration. The objector, Newell, urges the case of McKeown v. Officer, 53 Hun, 634, 6 N. Y. Supp. 201, but this is clearly distinguished from the Teed and Tiffany Cases; and it also appears that in the McKeown Case the method of computation was not before the court. The Teed and Tiffany Cases were both cases in accountings, while the Hollis Case was for the construction of a will where the life estate was not terminated. It would be a platitude to assert that the law prefers, whenever possible, mathematical accuracy to approximation by problematic conclusions, however exact the rule, but based upon uncertain or speculative data. The Teed Case reviews the Hollis Case, and upon this very point the court says:

"That [the Hollis Case] was a case dealing in uncertainties. In the case before us there is no uncertainty, because the proceeding is for the final distribution of an estate after the death of the annuitant, the length of whose life is accurately known."

In the case at bar all the events and facts that occurred during the existence of the life estate, actually necessary to the proper making up of a correct and detailed account, are known. It is not necessary to speculate in the slightest degree. Contingencies are eliminated and exactitude is secured. There is no intestacy as to this balance of $1,125.58 in the hands of the executor, after making his division, whereby the executor found the charitable legacies exceeded to that extent the one-half allowed by law. Code Civ. Proc. § 2721. Until all the valid legacies are paid there are no assets as to which the testator could be deemed to have died intestate. The rule is well settled that general legacies must be paid in full before residuary legatees are entitled to anything, and the general legacy should prevail over an intestacy. Wetmore v. St. Luke's Hospital, 56 Hun, 313, 9 N. Y. Supp. 753; Gilbert v. Taylor, 76 Hun, 92, 27 N. Y. Supp. 828.

Interest should be allowed on all legacies from the date of the death of testator's widow to the date of payment. Decreed accordingly.