In the Matter of the Judicial Settlement of the Account of the Executors of the Estate of ALFRED BLUMENTHAL, Deceased.*

Surrogate's Court, New York County, March 5, 1925.

Wills — construction — trust for life with remainder over to appointees or issue of beneficiary, or in case of no issue or no appointment, then to named legatees — death of beneficiary without issue or without exercising power of appointment, prior to death of testator, does not prevent vesting of remainder — value of life estate determined as to actual duration thereof — gift to charitable corporations of more than one-half of estate in violation of Decedent Estate Law, § 17 — testator died intestate as to excess bequeathed over one-half net estate — computation of value of estate postponed until final determination of debts.

A will which, after creating a trust for life to a beneficiary with remainder over to persons appointed by said beneficiary's will or to his issue, or in the event the said beneficiary dies, leaving no issue surviving, or fails to exercise the power of appointment, directs that the principal of the residuary trust be paid to certain named persons and charitable corporations, neither prevents the vesting of the remainder of said estate nor results in an intestacy as to any part of the residuary trust, though the beneficiary died before his testator, without issue and without having exercised the power of appointment, since the vesting of ultimate gifts is not prohibited by the death of a primary life tenant before the testator.

In determining whether or not the gift of the remainder to certain persons and to charitable corporations violates section 17 of the Decedent Estate Law, prohibiting the bequest of more than one-half of testator's estate for charity, the value of the life estate created for the benefit of testator's wife, in the event that the provisions of the will in the beneficiary's favor failed by reason of his death during the lifetime of said wife, should be determined as to the actual duration thereof, in this instance twelve days, rather than by the expectancy of life of said life tenant according to the mortality tables, as of the death of the testator. As so determined, the gift of the remainder to charitable corporations violates said statute and as to the excess bequeathed to said corporations over the one-half of the net estate, said testator died intestate.

The computation of the value of the estate in advance of the final determination of the debts would be premature.

PROCEEDING for judicial settlement of account of executors, involving construction of will.

*Wise & Seligsberg* [*Isaac Lande* and *Milton Winn* of counsel], for the executors of estate of Alfred Blumenthal, deceased.

*House, Grossman & Vorhaus* [*William Grossman* and *Joseph Fischer* of counsel], for the executors of estate of Hannah Blumenthal, deceased.

*Hoadly, Lauterbach & Johnson,* for the Mount Sinai Hospital.

*See, also, 119 Misc. 588.

*Arnstien & Levy,* for the Lebanon Hospital Association of City of New York.

*Winthrop & Stimson,* for the New York Orthopædic Dispensary and Hospital.

*Louis Werner,* for Grace H. Guinzburg.

*Samuel Riker, Jr.,* for the New York Eye and Ear Infirmary.

*De Forest Brothers,* for the Presbyterian Hospital.

*Arthur L. Davis,* for Jesse B. Perlman and another.

*Eugene Gottlieb,* for Armand Paul

*Emil Goldmark,* for the Federation for the Support of Jewish Philanthropic Societies of New York City.

*Peck & Hancock,* for St. Vincent's Hospital of the City of New York.

*Charles L. Kingsley,* for St. Andrew's Convalescent Hospital.

*Sanford Robinson,* for Marguerite Victoria Timen and another.

FOLEY, S.:

In this proceeding for the judicial settlement of the account of the executors, a construction of the will becomes necessary. Two questions have arisen: *First,* did the decedent die intestate as to the whole or a part of the residuary estate by reason of the fact that one of the life tenants of the residuary trust predeceased him? *Second,* was more than one-half of the estate bequeathed to charitable corporations in violation of section 17 of the Decedent Estate Law, as amended by chapter 301 of the Laws of 1923?

Alfred Blumenthal, the testator, died on June 12, 1921, as a result of injuries received in a railroad accident. As a result of the common disaster his son, Alfred Isaac Blumenthal, died on the day preceding the death of the father, June 11, 1921, and Hannah Blumenthal, the wife of the testator, died twelve days later, on June 24, 1921. The will provided for the payment of certain specific and general legacies. The residue was given to his executors in trust upon the following terms:

(a) The income of two-fifths of the trust was directed to be paid to the son, Alfred Isaac Blumenthal. At certain specified ages he became entitled to part of the principal, the balance being payable at the age of thirty-five. If Alfred Isaac died in the wife's lifetime, or before her remarriage and before he reached the age of thirty-five years, the income was directed to be paid to the testator's wife until her death or remarriage. Upon the happening of either

of the latter events, or upon Alfred's death before thirty-five, if he survived his mother, to the persons appointed by his last will, or in default thereof to his issue.

(b) The income of the remaining three-fifths of the trust was directed to be paid to the wife, Hannah Blumenthal, for her life or until her remarriage. Upon the occurrence of either of the latter events the income was to be paid to the son, Alfred Isaac, for life. Upon the death of the surviving wife or son the principal was directed to be paid to the persons appointed by the son's will, or in default thereof, to his issue. Certain other provisions, not material here, were included.

(c) The will further provided that in the event that the son Alfred should die without leaving lawful issue, or without having exercised the power of appointment, the principal of the residuary trust be distributed to certain named persons, institutions and charitable corporations; to some in fixed amounts, and to others in fractional shares. Alfred Isaac Blumenthal, the son, was an infant at the time of his death and left no issue surviving. No last will or other instrument exercising the power of appointment was made by him.

*First.* I hold that no intestacy resulted as to any part of the residuary trust. By reason of the death of the son Alfred Isaac before that of his father, the testator, the provisions of the will in the son's favor failed. The second life estate as to the two-fifths of the fund thus became effective for the wife of the testator. Her life estate terminated on her death and the ultimate gifts of the remainder became vested. The contention of the counsel for certain of the next of kin that there was intestacy, either as to the two-fifths of the residue or as to the entire residue, has no foundation under the terms of the will or the decisions of this State. Their theory is based upon the use of the phrase in the will, " in the event of my son's death during my wife's lifetime," and they argue that a condition precedent was created by the testator which permitted vesting in the ultimate remaindermen only in case the son died in the wife's lifetime. They assert that, as the son's death occurred in the lifetime of the testator, the entire testamentary scheme was destroyed. The phrase just quoted, in my opinion, is a very subordinate part of the will. The important phrase relating to the gift over to the remaindermen, under the circumstances as they actually existed at the date of death of the decedent, is found at the beginning of a subsequent paragraph in clause 9th of the will, which provides, " In the event that my son shall die without leaving lawful issue him surviving." It will be noted that this general language applied to the death of the son whether it occurred before or after the death of the testator.

The industry of these counsel in their voluminous briefs fails to produce a single authority in this State which distinguishes the general rule that the death of the primary life tenant before the testator does not prevent the vesting of the ultimate gifts.   Nor has the taking effect of a primary life estate ever been regarded as a necessary condition to sustain the validity of the remainders. The Court of Appeals in an unbroken line of authorities from *Norris* v. *Beyea* (13 N. Y. 273) down to *Matter of Fordham* (235 id. 384) has followed these principles.   (See, also, *United States Trust Co. of New York* v. *Hogencamp,* 191 N. Y. 281; *Williams* v. *Jones,* 166 id. 522; *Matter of Knapp,* 206 App. Div. 260; Real Prop. Law, § 58.)   Mr. Blumenthal's will presents a complete and comprehensive plan for the distribution of his entire estate. It is drawn in minute detail and with exceptional care.   It contemplated the very situation which actually occurred, and clearly demonstrates his attitude of generosity or discrimination towards all the objects of his bounty.   I hold, therefore, that the directions for the distribution of the remainders are valid and that there is no intestacy as to any part of the estate in this phase of the proceeding.

*Second.* Two of the testator's children and the executors and beneficiaries of the estate of his widow contend that the will violates the provisions of section 17 of the Decedent Estate Law (as amd. by Laws of 1923, chap. 301), since more than one-half of the estate, less debts, is given to certain charitable and religious corporations. That section provides as follows:

" Devise or bequest to certain societies, associations, corporations or purposes.   No person having a husband, wife, child or parent, shall, by his or her last will and testament, devise or bequeath to any benevolent, charitable, literary, scientific, religious or missionary society, association, corporation or purpose, in trust or otherwise, more than one-half part of his or her estate, after the payment of his or her debts, and such devise or bequest shall be valid to the extent of one-half, and no more."

The testator was survived, not only by his wife, but by his children by a former marriage, Harold Arthur Timen and Marguerite Victoria Timen.   The important question on this phase of construction is whether the value of the life estate created for the benefit of his wife shall be determined according to the actual duration of her life — twelve days — or by her expectancy of life according to the mortality tables, as of the death of testator.   If expectancy is the measure, the statute is not violated; if the actual duration of the widow's life is to be used, the testator has clearly bequeathed more than one-half of his estate to the class of corporations described in

the statute. It appears to me that in this estate the actual life tenure is conclusive and that the statute has been violated.

The very question which arises here was recently passed upon by the Court of Appeals in *Matter of Seymour* (239 N. Y. 259, modifying 209 App. Div. 655, and 122 Misc. 343). In that case the *cestui que trust* did not survive until the end of the period of expectancy of the mortality tables. The Appellate Division, Second Department, sustained Surrogate WINGATE's conclusion that the actual duration of life was the measure of the value of the life estate. The Appellate Division in its opinion referred to its previous decision in *Frost* v. *Emanuel* (152 App. Div. 687), where the same rule was applied (citing *Matter of Teed*, 59 Hun, 63, and *Rich* v. *Tiffany*, 2 App. Div. 25). The opinion points out that *Frost* v. *Emanuel* (*supra*) distinguished the case of *Hollis* v. *Drew Theological Seminary* (95 N. Y. 166). In the latter decision the general use of mortality tables was authorized in the computation of the life estate, but the actual duration of the life does not appear to have been involved there. An examination of the case on appeal and the briefs in the Court of Appeals in *Matter of Seymour* (*supra*) discloses that the appeal was taken from the specific part of the decree fixing the basis of the actual duration of the life tenant, and not the expectancy, as the measure of valuation. The Court of Appeals in its opinion, while modifying the court below upon other points, was silent as to this specific question, and its decision, therefore, affirmed the determination of the Appellate Division and the surrogate in rejecting the use of the period of expectancy.

Other authorities which have upheld the actual term as against expectancy are *Matter of Teed* (76 Hun, 567); *Matter of Runk* (55 Misc. 478), and *Matter of Suydam* (122 id. 340). The only contrary decision where the tables of life expectancy were employed is *Matter of Strang* (121 App. Div. 112). In *Matter of Seymour* (*supra*) the court, therefore, followed the weight of authority in the lower courts of this State. A stronger case for the application of this rule could hardly be found than the present one. The life tenant, the widow, and the testator died as the result of a common disaster. She lived but a few days after his death. Before the petition for the probate of the will was presented to this court the fact of her death was established. There is no necessity, under such circumstances, to apply rules of accountancy or actuarial computations to defeat the plain legislative mandate, which forbids giving more than one-half of the estate to charitable corporations or purposes.

In 1923 the Legislature gave increased vigor to the statute (Decedent Estate Law, § 17, as amd. by Laws of 1923, chap. 301)

by adding the word "purposes" so as to overcome the effect of the decision in *Allen* v. *Stevens* (161 N. Y. 122). It is significant the Legislature has not authorized the use of mortality tables in computing the moieties under this section. In other cases express authorization of their employment has been provided by legislative fiat. Thus, in section 230 of the Tax Law, as amended by chapter 657 of the Laws of 1924 (See McKinney's Consol. Laws & Supp.), the tables are directed to be employed in valuing life estates for transfer tax purposes. Similarly in the Rules of Civil Practice their employment is authorized in specific cases. In rule 243 they must be employed in the computation of dower. Under rule 30 they must be employed in the valuation of life estates where the funds are deposited in the custody of the court. In the present case, if the tables were employed, the charitable corporations would receive, in the face of the statutory prohibition, at least $100,000 more than one-half of the estate. The valuation of the life estate of the widow, Hannah Blumenthal, must, therefore, be based upon her actual survival for twelve days after the death of her husband and upon the actual income from the various trusts payable to her as life tenant of the trust. The testator died intestate as to the excess bequeathed to charitable corporations over the one-half of the net estate.

*Third.* The computation at this time in advance of the final determination of the debts of the estate would be premature. It must be postponed until the undisposed of claims are adjudicated in the present accounting, or in the litigation in the Supreme Court, in order to ascertain the total debts. After all of these claims are determined the computations may be fixed upon the settlement of the decree. If these debts cannot now be determined, computation must await a further accounting of the executors. In passing, however, the attention of the parties is called to the fact that some of the proposed methods of computations submitted to me are erroneous, because administration expenses, in addition to the debts, have been deducted from the total value of the estate as of the death of the decedent. Under the statute, debts only should be deducted. When the time finally arrives the method of computation of the various interests, and particularly the residuary gifts in order to ascertain the one-half of the estate, should follow the decision of the Court of Appeals in *Matter of Seymour (supra)* and the determination of the Appellate Division, Second Department, in *Matter of Brooklyn Trust Co.* (179 App. Div. 262).

Proceed accordingly.