In the Matter of the Estate of ROBERT SCHALKENBACH, Deceased.

Surrogate's Court, New York County, April 1, 1935.

*Thomas H. Casey* [*Walter X. Stanton* of counsel], for the petitioners.

*Howard C. Kelly*, for the Schalkenbach Foundation.

*Leubuscher & Kayser* [*Frederic C. Leubuscher* of counsel], for the trustee Leubuscher.

*McCanliss, Coutant & Hinch*, for the cotrustee Guaranty Trust Company.

*Chadbourne, Stanchfield & Levy*, for the Manufacturers Trust Company, as executor, etc., of Wilhelmina Schalkenbach.

FOLEY, S. The immediate application here is made by two life tenants of trusts created by the will of the testator. They are his brother and sister. They seek to open their default in failing to file objections in a pending accounting proceeding brought on by the trustees of the various trusts created by the will. The applicants were in default for a period of over one year. Entirely aside from the showing of any adequate reason for opening the default, the surrogate has considered upon the merits the questions raised by the moving parties as to the rights enforcible by them if the proposed objections had been permitted to be filed. These questions are either questions of law involving the construction of the will, or questions of law and fact wherein the material facts are undisputed. If the latter questions be resolved against the applicants, the opening of the default and their participation as objectants to the account become academic and futile.

(1) Upon the question of construction, I hold that the testator plainly intended in his will that a single trust should be set up for the benefit of each of the moving parties. Two trusts of $10,000 each, or a total of $20,000 for each of the two life tenants, were not intended to be created by the testator. I further hold that the will directed payment of income at the annual rate of five per centum and that the additional income earned above that rate from the rentals of the real estate within the trusts was payable to the residuary legatee and not to the life tenants. Moreover, the will

does not violate our statute against perpetuities. Separate trusts were created for a single life only. There was no unlawful suspension of the power of alienation.

The attack of the applicants upon the status of the Schalkenbach Foundation is belated in view of the lapse of ten years. It appears to be barred by reason of their execution of the agreement of July 1, 1925, with its express recognition of the foundation. Entirely aside from these considerations, I am of the opinion that the gifts to the foundation were valid charitable gifts. (*Leubuscher* v. *Commissioner of Internal Revenue*, 54 F. [2d] 998; *Matter of Frasch*, 245 N. Y. 174; *Matter of Durbrow*, Id. 469.)

The trustees, pursuant to the authority given to them in paragraph thirty-eight of the will, set up the corpus of the trust funds out of a parcel of improved real estate designated by the decedent. While there may have been some doubt as to the value of the real estate at the time of its inclusion in the trust and as to whether the value equalled the total amount of the trust funds, the two moving parties here ratified and agreed to the inclusion of this real estate by a formal executed agreement made on July 1, 1925. For a period of nine years they made no complaint as to the conduct of the trustees, or the validity of this agreement and currently received the income directed to be paid under the will out of the proceeds of the rents of the realty. I find upon the evidence no invalidity, imposition or fraud in the making of the agreement of 1925. The agreement, therefore, must stand. (*Fisher* v. *Fisher*, 253 N. Y. 260; *Matter of Cook*, 244 id. 63; *Minehan* v. *Hill*, 144 App. Div. 854; *Matter of Beresford*, 146 Misc. 140, 145; *Matter of Crowe*, 139 id. 648.) The question as to income has become academic. Because of the deficiency in the rents and the reduction in the income of the realty for the past few years, the payment of the income to the life tenants has been suspended. The trustees, however, and the Robert E. Schalkenbach Foundation, which is the remainderman of the various trusts and also the residuary legatee, by formal offer in open court have agreed to pay the deficiency in income to the life tenants and to set aside securities to assure future payment of the income during the lives of the respective life tenants. That offer should be promptly completed by a formal written instrument and the deficit of income paid and the appropriate fund set up to secure the payment of future income.

(2) The default is also sought to be opened for the purpose of enabling the applicants as next of kin to take advantage of their alleged rights under section 17 of the Decedent Estate Law, which prohibits the gift to charity of more than one-half of the estate of a decedent, less debts. I have determined to dispose of this question

on the merits and entirely aside from the questions of laches, acquiescence or relinquishment by the execution of the receipts and releases to the executor by the applicants in 1926.

The decedent died in 1924. The amended form of section 17 enacted by the Legislature upon the recommendation of the Decedent Estate Commission (Laws of 1929, chap. 229) which became effective September 1, 1930, and applied to estates of persons dying on and after that date, has no application to the estate here involved. The determination of the question requires a careful examination and analysis of the values of the estate assets and the application of the rules laid down by the Court of Appeals. The value of an apartment house, the principal asset of the estate, has been questioned. The testimony of experts, however, submitted to me by the trustees and not controverted by the moving parties, establishes that the value of the realty as of the date of death of the testator was $275,000 which was the amount fixed in the report of the transfer tax appraiser.

Under the pertinent decisions the estate is to be valued as if turned into money as of the date of death of the decedent. The shares passing to the various legatees, to the various trusts and to the residuary legatee are to be likewise based upon the same value of the assets of the estate as of the date of death of the testator. (*Hollis* v. *Drew Theological Seminary*, 95 N. Y. 166, 178, 179; *Matter of Durand*, 194 id. 477.) In order to ascertain the amount of the residue as of the date of death of the testator there must be deducted the debts, the pecuniary legacies, the amount of the trust funds, the succession and inheritance taxes and the administration expenses. It is contended here, because the trusts aggregated $225,000 and because under the agreement of 1925 executed by the applicants, the equity in the real estate amounting to approximately $154,000 was used exclusively to set up the trusts, that the residue passing to the charity should be increased by the difference between $154,000 and $225,000, or approximately $71,000. That contention urged by counsel for the applicants is untenable and disregards the primary rule that increases or decreases in value accruing after the date of death must be eliminated from the computation. (*Hollis* v. *Drew Theological Seminary*, *supra*, at p. 179; *Matter of Seymour*, 239 N. Y. 259.) No actual increase after death in the value of the assets, nor any assumed increase fixed by agreement of the parties interested can be used to change the original fixation of the respective shares of charities and of next of kin under section 17.

Computed as of the date of death under these rules, the value of the residue passing outright to the charity was $73,709.63. Counsel for the applicants also argues that since two of the life

tenants have died, the actual duration of those lives should be adopted rather than the actuarial value based upon expectancy. His method would require the inconsistent use of an actual life as to two persons and expectancy as to the four other life tenants. If actual duration was to be used exclusively, it would require a postponement of determination until the death of the last survivor of all the life tenants. I have determined in this case that actuarial value alone should be used in fixing the value of all the life estates. No extraordinary circumstances, such as existed in *Matter of Blumenthal* (124 Misc. 850), where the life tenant survived the testator by a few days, are present here. The leading cases in the Court of Appeals construing section 17 have authorized the employment in the usual case of the present values as of the date of death based upon expectancy. (*Hollis* v. *Drew Theological Seminary, supra; Matter of Durand, supra.*) In *Matter of Seymour (supra)* the difference between actual duration of the life and expectancy was negligible, and no express determination accepting actual life or rejecting expectancy was necessary.

Counsel for the applicants is likewise in error in failing to deduct from the face value of the trust funds the amount of the commissions to be paid to the trustees. It is immaterial that the trusts were ultimately set up with real estate. The trustees were entitled to commissions for receiving the real estate. (*Matter of Bearns*, 188 App. Div. 215; *Matter of Potter*, 106 Misc. 113, 126; *Matter of McGurk*, 175 N. Y. Supp. 597; *Matter of Keane*, 97 Misc. 213; *Matter of Naylor*, 164 N. Y. Supp. 462.) Under the terms of the will, trust funds were directed to be created, one for the widow of the testator in the sum of $175,000 and five others for various relatives in the sum of $10,000 each, or an aggregate of $50,000. In order to ascertain the net amount of the principal of each trust and to fix the respective values of life estate and remainder, receiving commissions must be considered.

The computation submitted by the attorney for the Schalkenbach Foundation is correct except in one phase. He has erroneously deducted from the corpus of the trusts, trustees' commissions both for receiving and paying out the fund. Commissions for paying over should not have been deducted. (*Matter of Jones*, 136 Misc. 122, 126.) The value as of the date of death of the testator of the remainder interests passing to the Schalkenbach Foundation should be recomputed under these directions. The following additional items must be added to it to ascertain the total gifts to charity: the sum of $73,709.63, the value of the residuary estate passing outright to the foundation, and the further sum of $7,000 passing to other charities. I specifically hold in this connection that one of

the legatees, the Manhattan Single Tax Club, a membership corporation, was not a charitable corporation or purpose within the meaning of section 17. (*Leubuscher* v. *Commissioner of Internal Revenue*, 54 F. [2d] 998.) Its legacy of $5,000 must, therefore, be excluded in the computation of the gifts to charity.

The attorneys for the trustees and the foundation are directed to file a new computation of the value of the various life estates and the charitable remainder interests. A computation made by the surrogate indicates a probable violation of the statute by an excess of approximately $300 passing to charity over the permissible one-half. This small excess, however, will be offset by the allowance of costs and the expenses upon this accounting. The latter items are included in the class of administration expenses and must be borne by the next of kin and paid out of their tentative intestate excess.

Entirely aside from the foregoing reasons, no evidence has been submitted to justify the setting aside of the releases to the executor executed by the applicants in 1926. (*Matter of Jackson*, 134 Misc. 750; affd., 227 App. Div. 777.)

In accordance with the offer of the foundation, a direction may be embodied in the decree providing for the payment of the unpaid income to the applicants as life tenants. The decree should also contain an appropriate provision for the setting up of the funds to secure the payment of future income fixed by the terms of the will for the benefit of the life tenants.

Submit decree on notice settling the account accordingly.