Nor do I think the contract, a copy of which is annexed to the complaint, can be specifically enforced. This agreement, which is signed by the parties to this action, provides that:

"The stockholders·shall deposit with the voting trustees certificate or certificates to the amount of $21,000 (twenty-one thousand par value) stock of the Flushovalve Company now or which may be held by the said stockholders, or any of them, together with sufficient transfers of such stock to the voting trustees."

The complaint alleges that by this agreement each of said stockholders were bound to deposit $21,000 par value of the stock, but the agreement does not so provide. $21,000 par value of the stock was to be deposited, not $63,000 the par value of the stock, and that was stock held by the said stockholders, or some of them. There is therefore no provision that I can find that the defendant should deposit his stock to the par value of $21,000 any more than the plaintiffs should deposit their stock. The utmost that could be said was that this $21,000 par value was to be divided among the three parties to the instrument when each would be required to deposit $7,000 par value of the stock. By the affidavit upon which the injunction was granted it appears that this company had a capital stock of $125,000, of which the defendant received $25,000, and $25,000 was to go to each of the plaintiffs. There was $40,000 par value of the stock to be sold at 40 cents on the dollar, and the proceeds were to be paid into the treasury of the company, and $10,000 of the stock was to be reserved as treasury stock. Considering the agreement and the allegations of the complaint, we do not think that a case was presented which justified the court in requiring this agreement to be specifically performed, and that the plaintiffs were not entitled to an injunction during the pendency of the action.

The order appealed from must therefore be reversed, with $10 costs and disbursements, and the motion to continue the injunction denied, with $10 costs. All concur.

―――――――――

### In re WAGNER et al.

(Supreme Court, Appellate Division, First Department. May 14, 1909.)

1. EXECUTORS AND ADMINISTRATORS (§ 104*) — MANAGEMENT OF ESTATE — LIABILITY.

Under a will giving testator's widow the net income of the estate until his son reached his majority, after which the income should be divided equally between them, the executors are not chargeable with interest on the amount of the principal paid over to the widow before the majority of the son; but after the son's majority they must pay one-half of the interest to him.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 423–432; Dec. Dig. § 104.*]

2. EXECUTORS AND ADMINISTRATORS (§ 118*) — MANAGEMENT OF ESTATE — LIABILITY.

Executors are properly chargeable with taxes and penalties accumulating because of their failure to pay taxes on the real estate and permitting

―――――――――――――――――――――――――――――――――――――――――――――――
*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the widow, entitled to the net income of the estate, to take the gross rentals and leave the taxes unpaid.

[Ed. Note.—For other cases, see Executors and Administrators, Dec. Dig. § 118.*]

3. EXECUTORS AND ADMINISTRATORS (§ 118*) — MANAGEMENT OF ESTATE — LIABILITY.

Executors, who hold real estate mortgages as a part of the estate, and who permit the mortgagors to make default in the taxes on the mortgaged premises, are liable only for the loss resulting to the estate, and when the property on a foreclosure brings more than the indebtedness and accumulated taxes no loss occurs.

[Ed. Note.—For other cases, see Executors and Administrators, Dec. Dig. § 118.*]

4. EXECUTORS AND ADMINISTRATORS (§ 125*) — MANAGEMENT OF ESTATE — LIABILITY.

Where testator gave the net income of his estate to his wife until a son reached majority, after which the income should be divided equally between them, and appointed the wife and third persons executors, all of whom qualified, and the wife failed to pay the taxes on the real estate, but appropriated to herself the gross rentals thereof, the third persons should only be compelled to pay the arrears of taxes on the estate in case they cannot be collected from the wife.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 508–522; Dec. Dig. § 125.*]

5. EXECUTORS AND ADMINISTRATORS (§ 125*) — MANAGEMENT OF ESTATE — LIABILITY.

Where an executor was permitted to handle the corpus of the estate, a coexecutor was responsible for the return to the estate of the property squandered by the executor only in case the latter failed to return it.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 508–522; Dec. Dig. § 125.*]

6. EXECUTORS AND ADMINISTRATORS (§ 511*)—SETTLEMENT—COSTS.

Executors who did nothing respecting the estate to their personal advantage, but who merely trusted a coexecutor, who was permitted to handle the principal, were not liable for the costs in proceedings for a settlement of their account; but the costs should be paid out of the estate.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2257–2266; Dec. Dig. § 511.*]

Appeal from Surrogate's Court, New York County.

In the matter of the judicial settlement of the accounts of James G. Wagner and Arnold H. Wagner, as executors and trustees under the will of Stephen H. Martling, deceased. From a decree of the Surrogate's Court, James G. Wagner and Cecelia G. Wagner, as the executrix of said Arnold H. Wagner, appeal. Reversed, with directions.

Argued before PATTERSON, P. J., and McLAUGHLIN, LAUGHLIN, HOUGHTON, and SCOTT, JJ.

Austen G. Fox, for appellants.
J. Van Vechten Olcott, for respondent.

HOUGHTON, J. Stephen H. Martling died, leaving a last will and testament, of which he appointed his wife, Anna M. Martling, and Arnold H. Wagner and James G. Wagner, executors and trustees. All of them qualified on probate of the will and entered upon the discharge of

their duties. After they had acted for some years proceedings were in-stituted by residuary beneficiaries for their removal. A decree removing them was made, and the respondent, the Farmers' Loan & Trust Company, was appointed administrator with the will annexed and trustee in their stead. During the pendency of the proceedings Arnold H. Wagner died, and his executrix was made a party to this proceeding for an accounting. The Wagners filed a joint account, and Mrs. Martling filed a separate one. Objections were filed to both accounts, and, after hearing, both were largely surcharged, and the Wagners bring this appeal.

It is unnecessary to state the details of the controversy, further than to refer to such parts of the decree as we deem erroneous. By the will of the deceased the testator's widow was given the entire net income of the estate until the son should arrive at the age of 21 years, which occurred on the 23d of May, 1905, after which time such income was equally divided between them. By the decree appealed from the account of the Wagners is surcharged by amounts of principal paid by them to the widow, aggregating $5,275, and also with interest thereon, amounting to $3,227.85. They are also charged with certain taxes and penalties thereon, which they negligently permitted to accumulate on real property owned by the estate, as well as upon real property on which the estate held mortgages, which were subsequently foreclosed or voluntarily deeded without foreclosure by the mortgagors, to the extent of $6,210.15. For the purpose of liquidating these back taxes they are directed to pay over to the respondent, the administrator with the will annexed, the surplus income found to be in their hands, amounting to $3,485.76, as well as the sum of $2,724.39, to make up the deficiency. Costs of the accounting are charged against them personally, and James G. Wagner was denied commissions; the will having provided by legacy for compensation to Arnold H. Wagner as counsel and executor.

It was manifestly improper to charge the Wagners with interest on the amount of principal which they paid over to Mrs. Martling, the life tenant. Whether she was in possession of the principal or not, she was entitled to the income; and, if the Wagners had held the principal in their hands, they must have paid the interest to her. The fact that she held the principal did not deprive her of the right to the interest. All that the Wagners were called upon to do on their accounting was to make good the corpus of the estate. After the 23d day of May, 1905, when the son became of age, up to the time of the decree, they were chargeable with one-half the interest which the son was entitled to, but not to the half which the widow was entitled to. The decree, therefore, should be modified by striking therefrom all interest on the $5,275 of principal paid by the Wagners to the widow up to the 23d day of May, 1905, from which date there should be charged against them only one-half the interest thereon for the benefit of the son, Stephen V. R. Martling.

The Wagners permitted taxes to become in arrears on property known as No. 227 West 120th street, title to which was held by the testator at the time of his death. It was proper that they should be charged with these taxes and accumulated penalties, because it was

their duty to see that they were paid before the life tenant took the income therefrom. Instead of paying the taxes, they permitted her to take the gross rentals and leave them unpaid. With respect to Nos. 231 and 233 West 120th street and Nos. 242, 246, and 248 West 121st street, the situation is quite different. One of these parcels was sold by the executors, and they took back a purchase-money mortgage. All the others had been sold by the testator in his lifetime, and purchase-money mortgages taken back by him, which mortgages passed to his estate. The charge against the Wagners is that they permitted the mortgagors to default in the taxes, thus crowding out the security of the mortgage. There is, however, no proof in the record that the security was impaired by this negligence, or that the estate lost anything, either by buying the property on foreclosure or taking deeds voluntarily given by the mortgagors, as was done in some cases. All that the estate was entitled to, and all that the Wagners were responsible for, was the amount of the various mortgages. If the property taken over, at the time it was taken or bought on foreclosure, was of the value of the mortgage, together with the accumulated interest and accumulated taxes, the estate lost nothing, and the negligence of the Wagners, therefore, did no harm. They appear to have been arbitrarily charged, without proof that loss occurred through their acts. This branch of the controversy should be remitted to the surrogate for further proof and determination.

The decree made on the accounting of the coexecutrix, Mrs. Martling, appears in the record, although she does not appeal, and she is charged for the benefit of the residuary estate with substantially the same items charged against the Wagners. It was her duty, before appropriating to herself the gross rentals of the real property held by the estate, to pay the taxes thereon. She is an accounting party in the Surrogate's Court, and that court has jurisdiction over her acts, and can determine what shall be paid to her, and we see no reason why it cannot compel her to apply her current income to the liquidation of the back taxes which she should have paid. In any event the decree against the Wagners should provide that as to No. 227 West 120th street they should not be compelled to pay the arrears of taxes thereon, unless the same cannot be collected from Mrs. Martling. So, also, the decree should provide that the Wagners should not be compelled to pay the $5,275 of principal which they paid over to Mrs. Martling, unless the same cannot be collected from her. She was coexecutrix and trustee, and it was not improper to allow her to handle the principal, and the Wagners are responsible for its return to the corpus of the estate only in case she fails to return it. The Wagners having voluntarily paid the money over to her, and she having squandered or lost it, they are responsible for its return; but they are only responsible in case she shall fail to make it good.

We do not feel disposed to say that the surrogate improperly removed the Wagners as executors and trustees; but, under the circumstances, we think costs were improperly charged against them personally. They did nothing respecting the estate to their personal advantage, but merely trusted a coexecutor. An accounting was proper in any event,

and the costs so charged against them should have been made payable out of the estate, and the decree is modified accordingly.

The decree should therefore be reversed in so far as it charges the Wagners with $3,227.85 interest on the $5,275 of principal paid over to Mrs. Martling, and that item should be stricken out, and only one-half the interest from May 23, 1905, charged against them; the decree should also be reversed in so far as it charges the Wagners with taxes and penalties thereon which the mortgagors permitted to accumulate upon real property on which the estate held mortgages, and that matter should be remitted to the surrogate for further hearing and determination in conformity with this opinion; and the decree should be modified in the other respects stated herein, and, except as so reversed or modified, it should be affirmed, with costs of this appeal to both parties payable out of the estate. All concur.