In the Matter of the Petition of HENRY ALBERS and Others to Render and Settle Their Account as Executors of the Will of ANNA M. BRAASCH, Also Called ANNA MARIA BRAASCH, Deceased.

ROBERT BRAASCH and Another, as Executors, etc., of WILLIAM C. F. BRAASCH, Deceased, and Others, Appellants; GERMAN EVANGELICAL AID SOCIETY and Others, Respondents.

Second Department, June 22, 1923.

Wills — construction — will directed sale of real and personal estate and payment of legacies out of proceeds — more than one-half estate was bequeathed to charitable corporations — residuary estate was bequeathed to charitable corporations — intention was not to convert realty into personalty for all purposes — money from sale of real property left because of failure of charitable bequests retained character of real estate — cemetery corporation is charitable corporation within Decedent Estate Law, § 17.

The will of the testatrix directed her executors to sell and dispose of all her real and personal estate and to pay out of the proceeds of said sale and out of her personal property not specifically bequeathed, certain specific legacies and bequeathed her residuary estate to a charitable corporation. Several of the specific legatees were charitable corporations also. The bequests to the charitable corporations amounted to more than one-half of her estate and were invalid, therefore, under section 17 of the Decedent Estate Law in so far as they exceeded one-half of the estate after the payment of debts. The real estate was converted into cash.

*Held,* that it was not the intention of the testatrix to convert her real estate into personalty for all purposes but merely for the purpose of convenience in paying the legacies.

Accordingly, in so far as her intention to dispose of her estate failed under section 17 of the Decedent Estate Law for want of power, the character of the estate undisposed of is not affected by her attempt at its disposition and, therefore, that part of the assets, remaining after complying with the valid portion of the will, which was derived from the sale of real property retains its character as real property for the purposes of disposition under the statute as intestate property and passes to the heirs at law of the testatrix and not to her husband or his estate.

For the purpose of computing the amount which the residuary legatees may take under section 17 of Decedent Estate Law, a trust fund given to a cemetery corporation for the purpose of maintaining the burial lot of the testatrix must be included among the bequests to charitable corporations.

APPEAL by Robert Braasch and another, as executors, etc., and others, from a decree of the Surrogate's Court of the county of Kings, entered in the office of said Surrogate's Court on the 6th day of April, 1922, judicially settling the accounts of Henry Albers and others, as executors, etc., of Anna Maria Braasch, deceased.

*Frank C. Laughlin* [*Jay Noble Emley* with him on the brief], for the appellants Robert J. Braasch and Amanda M. Braasch, as executors, etc., of William C. F. Braasch, deceased.

*Samuel Conrad Cohen* [*Henry Albers, Jr.,* with him on the brief], for the appellants, heirs at law.

*Christopher Steinkamp,* for the appellant Wartburg Orphan Farm School.

*Franklin P. Trautmann,* for the respondents, accounting executors of Anna M. Braasch, deceased.

*Fred L. Gross,* for the respondent German Evangelical Aid Society.

RICH, J.:

Anna Maria Braasch died May 23, 1918, leaving her surviving a husband, who has since died, and is represented in this proceeding by his executors, but no descendants. The account showed that the debts amounted to $722.13. By paragraph " IV " of her will she directed her executors to sell and dispose of all her real and personal estate, and, until the sale, authorized them to collect all rents, income, profit and interest of her real and personal property, adding the same to the proceeds of such sale, and (paragraph " V ") " Out of the proceeds of such sale, and out of my personal property not herein specifically bequeathed," to pay (1) to the Lutheran Cemetery the sum of $3,000 in trust for the care of her burial plot; (2) to certain legatees, named, sums totaling $5,100, and (3) to institutions, therein named, as to which it has been stipulated that they are charitable corporations, sums aggregating $11,500. After the payment of the legacies above referred to, she devised and bequeathed her residuary estate to the Wartburg Orphan Farm School of the Evangelical Lutheran Church, also a charitable corporation, upon certain conditions, in default of the performance of which there was an alternative gift over to another charitable institution upon the same conditions with gift over, in case of default in compliance with the conditions, to the children of nephews and nieces, the heirs at law in this proceeding, but, by a codicil, all conditions as to the latter charitable institution were withdrawn, and the gift over to the heirs at law revoked. Her estate consisted of $50,706.14 in personalty, and $16,071 in realty, the personalty in the form of cash and mortgages. The real estate has been sold.

The learned surrogate, in passing upon the objections to the account, filed by the executors of testatrix's husband, and the

request for a construction of the will by the heirs at law, who appeared but filed no objections, has found that the direction to sell effected an equitable conversion of the realty into personalty *only* to the extent to which the gift of the real property was valid, and that as charitable corporations may take only one-half of the estate after the payment of debts (Decedent Estate Law, § 17), the excess over the amount properly payable to them is to be distributed as intestate property, the heirs taking such proportion of the excess as represents the proceeds of real estate, and the distributees such proportion as represents personalty. He has also found that the real property, and personal property not specifically bequeathed, are grouped together by testatrix as a single fund out of which the legacies are payable, and to the payment of which the real and personal property forming the fund are proportionally applicable.

Both the husband's executors and the heirs at law appeal from the decree entered thereon, the former claiming the *whole* of the excess undisposed of, on the theory that there was a conversion of the realty into personalty to which his estate is entitled by virtue of his marital rights (Decedent Estate Law, § 100;* *Gerber* v. *State Bank*, 167 App. Div. 263), while the latter claim that the personal estate being more than sufficient to pay all *valid* bequests, there was no necessity for the conversion of the real property, which descended to them upon testatrix's death, and that the proceeds of the real estate *unnecessarily* sold belong to them. It is also urged by the husband's estate that for the purpose of computing the amount which the residuary legatee may take, under section 17 of the Decedent Estate Law, the trust of $3,000 to the Lutheran Cemetery must be included among the bequests to *charitable corporations*.

The questions raised by this appeal relate to (1) whether or not by the provisions of paragraph " IV " of her will testatrix effected a conversion of her realty into personalty for all purposes, and (2) whether or not the Lutheran Cemetery is a charitable corporation within the meaning of section 17 of the Decedent Estate Law. The answer to the first question depends to a great extent upon the intent of the testatrix, to be gathered from the context of the will, its other provisions, the character of the estate, the situation of the heirs, the relationship they bore to the testatrix, and the iniquity and injustice of the construction contended for. (*Armstrong* v. *Galusha*, 43 App. Div. 248, 255.)

That she did intend her realty to be converted and, when so

* Since amd. by Laws of 1919, chap. 295, which changed the law of this State on May 3, 1919.— [REP.

converted, to be grouped together with her personalty as a single fund for the payment of legacies, is evident. The scheme of her will indicates that she did not intend her husband (by a second marriage) to have any *substantial* part of her estate (note the provision for the inscription upon the door of the room to be fitted out by the residuary legatee in its institution — it was to bear the names " *John G. Gotze* " and " *Anna Maria Gotze,*" not " *Braasch,*" her second husband). Under the circumstances a construction that would result in vesting in his estate, in preference to testatrix's blood relations, the *whole* of that portion of the estate, *both* real and personal, as to which it has been held testatrix died intestate, is to be avoided.

There is evidence of a clear intention to be collected from the will that the land was to be sold and converted into money, *before* division, whether the particular purpose of her will failed or not. (*Read* v. *Williams,* 125 N. Y. 560, 571.) In that case, a *power* was given to the executors for the purpose " after the same shall have been duly converted into money," of distributing it to such charitable corporations, as they, with the advice of a named friend, should designate. It was held that the *power* was void for indefiniteness, and, therefore, the gift failing, the *purpose* of the conversion ceased. Such a situation does not exist in the case at bar, where the conversion was directed, not for the *purpose* of distributing the proceeds to the residuary legatee, but for the *purpose* of paying other legacies as well, to individuals and institutions, totaling some $19,000, or over one-fourth of her estate.

That testatrix's purpose was to divide the *greater* portion of her estate among the charitable corporations named therein is evident. Her plan offended, but only in *part,* against the law of the State, and as to *such* part the legal result is the same as if she had not made any attempt to dispose of that part of her estate, for as to *that* she died intestate. And in so far as her intention to dispose of her estate failed for *want of power,* it would seem to be a necessary and logical result that the *character* of the estate undisposed of would be unaffected by her futile attempt at its disposition. The real estate may be so situated, as it is here, as to require a sale of all of it in order to execute the *valid* portions of the will, and thus it will be turned into money in fact, but for the purposes of disposition under the Statute of Descent and Distribution (Decedent Estate Law, art. 3, as amd.) as intestate property, it will retain its character as real estate. (*Jones* v. *Kelly,* 170 N. Y. 401, 408, 409.)

In *Kearney* v. *Missionary Society of St. Paul, etc.* (10 Abb. N. C. 274), cited by the husband's estate in support of the

proposition that there was a conversion in the case at bar, the estate consisted substantially of realty, as to which a conversion was directed, and out of the proceeds the executors were directed to pay certain legacies, and other legacies to religious societies in excess of the amount permitted by statute. While it was held in that case that there was an out and out conversion of the realty into personalty, it is evident there that the primary *purpose* of the conversion was *valid*, a trust for the testatrix's husband, the remainder of which was to pass to the charitable institutions. It was there held that the gift *not* failing, the *purpose* of the conversion did not cease, and the fact that the religious societies could not take all the " proceeds " which was intended to be given to them, did not restore, to the part which they could not take, the quality of realty. (*Supra,* 278.) In the case at bar, the *gift* of the proceeds of real estate to the charitable corporations other than the residuary legatee, did not *entirely fail*, but it did fail in part, and as to *that* part she died intestate, and it retains its *character* as real estate. (*Jones* v. *Kelly, supra.*)

The learned surrogate, therefore, properly applied the principle to the case at bar, that where the conversion of real estate into personalty is incident to the devise, and for the purpose of making it conveniently workable, then as to *so much* of the estate as the devise fails to dispose of, because in violation of law, the conversion also fails. (*Jones* v. *Kelly, supra.*) After the payment of the legacies, proportionally out of both the realty and personalty, the heirs take such proportion of the excess as represents the proceeds of real estate, and the distributees (the husband's estate) such proportion as represents personalty, subject to the expenses of administration.

In reference to the second contention, it appears the Lutheran Cemetery was incorporated in 1852, under chapter 133 of the Laws of 1847. It is a membership corporation. Section 13-a of the Personal Property Law (added by Laws of 1909, chap. 218, as amd. by Laws of 1911, chap. 430) provides: " Gifts, grants and bequests of personal property, in trust for the purpose of perpetual care and maintenance, improvement or embellishment of private burial lots, in or outside of cemeteries, and the walks, fences, monuments, structures and tombs thereon are permitted and *shall be deemed to be for charitable* and benevolent uses. * * * Any cemetery association may act as trustee of *and execute any such trust* * * * whether such power be otherwise included in its corporate powers or not." In *Driscoll* v. *Hewlett* (198 N. Y. 297) the court said (p. 298): " The donees of the residuary estate are a religious corporation and the gift constituted a trust for its administration,

which, for involving perpetuity, would be void, unless saved by some statute. A recent act has authorized trusts for the care of cemetery lots and has *classified them with charitable and benevolent uses.*" To hold that a gift to an institution of this character is not within the inhibition of section 17 of the Decedent Estate Law, it seems to me, would be tantamount to holding that the testatrix might convey her entire estate to a cemetery corporation.

I am of the opinion that for the purpose of computing the amount which the residuary legatee may take, under section 17 of the Decedent Estate Law, the trust for $3,000 to the Lutheran Cemetery must be included among the bequests to charitable corporations.

I, therefore, advise that the decree be modified by providing that for the purpose of computing the amount which the residuary legatee may take, under section 17 of the Decedent Estate Law, the trust of $3,000 to the Lutheran Cemetery must be included among the bequests to charitable corporations. Inasmuch as the husband's estate has been successful upon this appeal to the extent of the addition of $3,000 to the personal property, and the executors have sustained the surrogate's decree in all but this item, I advise the allowance of costs to the husband's estate and the executors payable out of the estate.

KELLY, P. J., JAYCOX, MANNING and KELBY, JJ., concur.

Decree of the Surrogate's Court of Kings county modified in accordance with opinion, and as so modified affirmed, with costs to the accounting executors and the executors of William C. F. Braasch, deceased, payable out of the estate.