In the Matter of the Judicial Settlement of the Account of Proceedings of WILLIAM MUSS ARNOLT and STEPHEN WRAY, as Executors, etc., of CHARLOTTE FRANCES LOUISE ARNOLT, Deceased.

Surrogate's Court, Bronx County, June 18, 1926.

Wills — construction — testator by residuary clause in will gave remainder of estate " both real and personal, of every name and nature " to her executors in trust for certain designated purposes — trustees directed by said clause to pay over to Home for Incurables " all the balance of the funds in their hands " for care of patients therein — said clause construed as disposing of decedent's real and personal property — decedent's gift of more than one-half of her estate to charitable corporations invalid under Decedent Estate Law, § 17, where husband survives — fact that life beneficiaries are alive compels determination of value of estate in this proceeding pursuant to annuity tables — amount charities take predicated on value of decedent's real and personal property as of date of death — administration expenses, Federal estate tax, legacies other than those to charities and commissions must be deducted and residue of invalid portion of gift descends as if decedent had died intestate — power of sale given by will did not work equitable conversion — trust for husband and cousin for life is valid — distribution of income to charities — portion of income of real estate as to which decedent died intestate payable to heirs — portion of income of personalty payable to decedent's husband — rule for distribution of estate upon death of two life beneficiaries — decedent's real estate descends to heirs on her mother's side — premises conveyed to decedent by her mother by deed reciting consideration deemed gift and descends to her heirs on her mother's side — " accrued income " means surplus income — legacies not subject to any deduction by reason of fact testatrix bequeathed more than one-half of estate to charities — taxes and carrying charges on real property in which husband had life estate payable by life tenant out of income — commissions — executors entitled to usual commissions for collection of rents and managing property — executors not entitled to commissions upon realty where power of sale was not exercised — increase in value of estate as to which decedent died intestate passes to trustees for benefit of persons taking ultimately — executors should not be surcharged for failure to pay taxes promptly in view of condition of estate — power of sale as to all realty except that left to husband should be exercised.

The residuary clause in a will by which the testatrix after giving the " residue and remainder of my estate, both real and personal of every name, nature and description " to her executors in trust for certain designated purposes, directed

that her trustees pay over to the Home for Incurables, a charitable organization "all the balance of the funds in their hands, both of principal and interest to be a fund * * * for the purpose of caring for the poor patients of that institution, and if the amount is sufficient for that purpose, to endow a bed or beds therein" disposes of decedent's real and personal property and there is no intestacy as to her real property.

The fact that she made reference to the balance of the income as "funds" and directed the trustees "to pay over" the same does not preclude such construction, since it is not necessary to use any particular form of expression to give effect to disposition by will. Nor will decedent be deemed to have died intestate as to her real property by reason of the fact that if the real estate were included the amount would be so large that many beds might be endowed therewith, since it might well be that the decedent intended that the poor patients should be taken care of and when that had been done if the amount which remained was sufficient beds were to be endowed therein.

However, since decedent disposed of all of her real and personal property it must be conceded from the evidence that she attempted to give more than one-half of her estate to charitable corporations in violation of section 17 of the Decedent Estate Law, and that as she left her a husband surviving, this disposition is valid only to the extent of one-half and no more, as provided in said section.

The fact that both life beneficiaries under decedent's will are alive compels the ascertainment of the value of the interests of the life beneficiaries in this accounting proceeding which involves the construction of the will pursuant to the annuity tables in order to ascertain the present value of the estate, and the value of the portion given, so that it may be determined whether or not the provisions of the statute have been violated.

In order to ascertain what the charities may take, the value of the decedent's real and personal property as of the date of her death must be fixed, and from this must be deducted her debts, the same to be paid out of the personalty. The value of the balance of the personalty and the real estate on hand should then be divided in half and all of the charitable organizations are permitted to take no more than a half so ascertained. The remaining half will consist of one-half of the net personalty of the decedent after the payment of debts, and one-half of her realty. Out of the personalty in this half must be paid the expenses of the administration, the Federal estate tax, the legacies other than those to charities, commissions and such other charges as are usually payable out of the residuary estate. So much as then remains of the personalty and the realty is distributable and descends to the same persons as if the decedent had died intestate.

The will did not work an equitable conversion because powers of sale were given both to the executors and to the trustees, for the right thus given was intended to facilitate the dispositions provided for by the testatrix and does not necessarily indicate an intention that she wished to change the character of her real estate to personalty.

Since the dominant intent of the testatrix, after providing for legacies of comparatively small amounts was to provide incomes of $1,500 a year for her husband and $1,000 a year for a cousin for life, there should be paid out of the total income yearly to said beneficiaries, the amount set apart for them under the trust which was valid so far as the provisions for her husband and cousin were concerned. The fact that the husband is both a beneficiary and one of the trustees does not render the trust invalid as to him, for he is not the sole trustee.

From the income of the one-half of the personalty and the one-half of the realty, or the proceeds of its sale, which represents what the charities are permitted

to take, there should be applied an amount not exceeding $4,000 for the improvement and care of a cemetery plot, which must be considered a provision for charitable and benevolent uses. Thereafter, the income from such halves should be paid to the charitable corporations other than the Home for Incurables until the legacies have been satisfied or until the death of the life beneficiaries. The remainder of such income is then payable to the Home for Incurables as the corporation presumptively entitled to the next eventual estate.

The income of the other half of the estate or its proceeds, which is the half as to which testatrix is presumed to have died intestate, is payable to her heirs, and the income of the other half of the personalty, or so much as remains after the payments heretofore set forth, is payable to decedent's husband.

Upon the death of the two life beneficiaries, there is payable out of the half which the trustees have held for the benefit of the charitable corporations any amount which may still be payable to the charities other than the Home for Incurables, and the balance goes to said home. The other half of the real estate goes to the heirs at law of decedent pursuant to article 3 of the Decedent Estate Law, and the remainder of the personalty is payable to the estate of decedent's husband.

The real estate of which testatrix died seized, which came to her by devise, gift or descent of her mother, or the proceeds of the sale thereof subject to the trust created, descends to the decedent's heirs on her mother's side. So much of the real estate which she herself purchased or the proceeds of its sale, subject likewise to the trust which she created, descends to her heirs on her mother's and father's side, including real estate which she purchased wholly or partly with the proceeds of the sale of real estate which came to her on the part of her mother or father. (Decedent Estate Law, §§ 84, 88.)

Premises conveyed to decedent by her mother by deed which recites a consideration of $100 must be adjudged to be a gift and having come to decedent on the part of her mother must descend accordingly.

The words " accrued income," as used in decedent's will, mean surplus income after the payments theretofore referred to, and it was her intention that the legacies to charitable corporations there mentioned should be paid out of this surplus income or, in the discretion of the trustees, out of the principal. But so much of such legacies as had not been paid either out of income or principal, or both, was to have been paid when the trust came to an end; thus said provisions do not involve an unlawful accumulation within the meaning of section 61 of the Real Property Law and section 16 of the Personal Property Law.

The amounts of the legacies are not subject to any deduction by reason of the fact that testatrix has bequeathed more than one-half of the estate to charity.

As the will does not disclose a contrary intention on testatrix's part, the taxes and carrying charges on the real property in which the husband has a life estate are payable by the life tenant out of the income. The taxes on the unimproved real estate are payable out of such real estate and the proceeds of the sale thereof may be applied thereto.

The two executors who managed the real property of the decedent other than that left to decedent's husband for life, one of whom collected the rents thereof, are only entitled to the usual commission of five per cent of the amount of rents collected, such commission to be divided between them. Said executors are not entitled to any commission upon the realty in view of the fact that the power of sale was unexercised.

The increase in the value of the real estate as to which the decedent is deemed to have died intestate and on so much of the amount going to charity as is represented by real estate, which accrued between decedent's death and the date of sale, passes to the trustees for the benefit of the persons who will ultimately

be entitled to receive the real estate of which the decedent is deemed to have died intestate. All increases in personalty after the deduction of the amounts payable therefrom go to the trustees for the benefit of decedent's husband.

In view of the condition of the estate, the amount of vacant realty, and the uncertainties of the will, the executors should not be surcharged for failure to pay the taxes promptly.

In order to administer this estate properly, in view of the effect of section 17 of the Decedent Estate Law, and to set up the trust created, it would seem proper that the power of sale which the decedent gave to the executors should be exercised by them as to all of the real estate except as to that which was left for the life of the husband of the decedent, as soon as this may reasonably be done.

PROCEEDINGS on judicial settlement of account.

*Bernard J. Isecke* and *Luke J. Le Rolle*, for William Muss Arnolt, executor.

*Mapes & Raynor* and *Stephen Wray*, in person, for Stephen Wray, executor.

*Junius Pendleton Wilson*, special guardian for Martha Louise Waring.

*Meyer Levy*, special guardian for George W. Schultz and others.

*Andrew F. Murray*, for Louisa F. Miller and another.

*George W. Martin*, for the Home for Incurables.

*Robert E. Bergman*, for Clara Turner and others.

*Louis Steckler* and *Edward L. Steckler*, for Ida M. Frazer.

*George Stamper*, for Gottfried Schultz.

*Craig & Craig*, for Mary V. Schultz and others.

*Stetson, Jennings, Russell & Davis*, for Stony Wold Sanatorium.

*Cadwalader, Wickersham & Taft*, for the Salvation Army.

*Hill, Lockwood & Redfield*, for Peabody Home for Aged and Indigent Women.

*Aaron Morris*, for Minnie Schultz Manss and others.

*William C. Stone*, for American Red Cross.

*Thomas F. Haggerty*, for Wilhelmine Happ and another.

*Cecilia M. Sheil*, for Louise S. Roemer.

SCHULZ, S. In this accounting proceeding the petitioners ask for a construction of the last will and testament of the decedent. It is also necessary to dispose of objections to various items set forth in their account. It will be impossible, without extending this opinion to an unreasonable length, to set forth the will in

full or to discuss in detail the large number of questions which have arisen, and I must content myself with a brief reference to each.

One of the main contentions is that the residuary clause of the will disposes only of personal property, and that the decedent died intestate as to her real property.

The decedent, after providing for the payment of her debts and funeral expenses, some specific and general legacies and a life estate for her husband in one of her parcels of real estate, continues in the 12th paragraph of her will, as follows:

" *Twelfth.* All the rest, residue and remainder of my estate, both real and personal, of every name, nature and description,   *   *   * I give, devise, and bequeath to my Executors hereinafter-named, in trust nevertheless, to have and to hold the same for the following uses and purposes, namely:"

Then come numerous provisions with regard to the powers and duties of the trustees, directions for the payment of annuities for the improvement and care of a cemetery plot and for payments to charitable institutions, etc., after which she disposes of the trust estate as follows:

" I direct my trustees to pay over to The Home for Incurables, *   *   *   all the balance of the funds in their hands, both of principal and interest, to be a fund, known as the Gottfried and Louisa H. Schultz Fund,   *   *   *   for the purpose of caring for the poor patients of that institution, and if the amount is sufficient for that purpose, to endow a bed or beds therein."

The fact that she made a will in which there is a residuary clause raises the presumption that she did not intend to die intestate as to any of her property, and that construction should be preferred which prevents intestacy. (*Matter of Hunt,* 207 App. Div. 127; affd., 237 N. Y. 613; *Hadcox* v. *Cody,* 213 id. 570; *Matter of Knapp,* 122 Misc. 346; 40 Cyc. 1409, cases cited under note 4.)

That she called the balance " funds " and directed the trustees " to pay over " the same does not of itself prevent such construction, for it is not necessary to use any particular form of expression to give effect to a disposition by will. (*Bliven* v. *Seymour,* 88 N. Y. 469, 476, and cases cited. See, also, *Jackson* v. *Luquere,* 5 Cow. 221, 228; *Klock* v. *Stevens,* 20 Misc. 383, 385; *Matter of Golicki,* 116 id. 100, 103.) Nor does the fact, as urged, that if the real estate were included, the amount would be so large that many beds might be endowed therewith, do so. The provisions for the Home for Incurables was " for the purpose of caring for the poor patients of that institution," and the language used does not compel the conclusion that it was only to be used for the purposes of endowing

a bed or beds therein. It might well be that the decedent intended that the poor patients should be taken care of, and when that had been done, if the amount which remained was sufficient, beds were to be endowed therein. Such a construction is as reasonable as that contended for by some of the parties and should be preferred because it prevents intestacy. It seems very unlikely that the decedent prepared this elaborate and lengthy will, and yet intended to die intestate as to her real property which was by far the greater part of her estate. I hold that there was no intestacy as to the realty.

If the decedent did dispose of all of her real and personal property, then it appears to be generally conceded that she attempted to give more than one-half of her estate to corporations of the character mentioned in section 17 of the Decedent Estate Law as then in effect (Laws of 1909, chap. 18; Consol. Laws, chap. 13), and as she left a husband her surviving, this disposition is valid only to the extent of one-half and no more as provided in said section.

Counsel for one of the executors contend that by reason of the intervention of a period measured by two lives, the ascertainment of the value of the estate should be deferred until the time of distribution. If this were an accounting proceeding brought after the death of the life beneficiaries, and it was a question of ascertaining the value of the life interests at that time, it would be proper to take their actual value and recourse under such circumstances should not be had to annuity tables. (*Matter of Teed,* 59 Hun, 63; 76 id. 567; *Rich* v. *Tiffany,* 2 App. Div. 25; *Frost* v. *Emanuel,* 152 id. 687; *Matter of Seymour,* 122 Misc. 343; mod., 209 App. Div. 655; mod., 239 N. Y. 259; *Matter of Blumenthal,* 124 Misc. 850; affd., 214 App. Div. 784.)

While this is an accounting proceeding, the question involved is one of construction and the life beneficiaries are both alive. Under such circumstances *Hollis* v. *Drew Theological Seminary* (95 N. Y. 166) fixes the method to be followed, and the annuity tables must be resorted to in order to ascertain the present value of the estate and the value of the portion given so that it may be determined whether or not the provisions of the statute have been violated. None of the cases above cited question the correctness of the decision in *Hollis* v. *Drew Theological Seminary (supra),* under the circumstances there existing.

I conclude, therefore, that the present value of the interests of the life beneficiaries should now be computed, and the value of the estate determined at this time.

In order to ascertain what the charities may take, the value of the decedent's real and personal property as of the date of her

death must be fixed. From this is to be deducted her debts, the same to be paid out of the personalty. The value of the balance of the personalty and the real estate on hand should then be divided in half and all of the charitable organizations are permitted to take no more than a half so ascertained. (*Matter of Seymour*, 239 N. Y. 259; *Matter of Carnegie*, 203 App. Div. 91; affd., 236 N. Y. 517; *Matter of Brooklyn Trust Company*, 179 App. Div. 262, 264.)

The half remaining after setting aside that which the charities may take, consists of one-half of the net personalty of the decedent after the payment of debts and one-half of her realty. Out of the personalty in this half must be paid the expenses of administration, the Federal estate tax, the legacies other than those to charity, commissions and such other charges as are usually payable out of a residuary estate. (*Matter of Seymour, supra*, 262; *Matter of Brooklyn Trust Company, supra; Matter of Carnegie, supra.*)

So much as then remains of the personalty and the realty is distributable and descends at the time hereinafter stated to the same persons as it would if the decedent had died intestate.

The will did not work an equitable conversion. (*Scholle* v. *Scholle*, 113 N. Y. 261.) Powers of sale were given both to the executors and to the trustees, but that of itself did not have the effect contended for by some of the parties. The right to sell thus given was intended to facilitate the dispositions provided for by the testatrix, and does not necessarily indicate an intention that she wished to change the character of her real estate to personalty.

If by giving her executors a power of sale she intended to convert her real estate, it would be somewhat difficult to explain the fact that she devised her estate " both real and personal " to her trustees and that she gave the trustees a right to sell her real estate, to exchange strips of land, to lease and let the same and to borrow on bond and mortgage in order " to maintain or improve any part of said real estate."

It has been held that where the conversion is an incident to the devise, then as to so much of the devise as fails because in violation of law, the conversion likewise fails. (*Barber* v. *Terry*, 224 N. Y. 334, 339; *Jones* v. *Kelly*, 170 id. 401, 408; *Matter of Braasch*, 206 App. Div. 96.) Under such circumstances, the conversion would still be effective as to a part of the realty, but the language of this will does not warrant a finding that a conversion of any of the realty was intended.

It appears to me that the dominant intent of this testatrix, after providing for legacies of comparatively small amounts, was to

provide incomes of $1,500 per year for her husband, and $1,000 per year for a cousin so long as they lived.   To accomplish that and other purposes, she put all of her remaining property in trust and specified that the payments above stated should be the first to be made out of any income that accrued.   That trust was a valid trust so far as the provisions for her husband and cousin were concerned, and nothing in section 17 of the Decedent Estate Law invalidated it or had any effect on it whatsoever.   It was only the subsequent provision. for charities which violated the section.

The decedent had a right to provide for the life beneficiaries and to put as much or all of her estate in trust to insure payment as she wished.   It would seem, therefore, that all of the estate which remains after the payment of the legacies, etc., contained in the first eleven paragraphs of the will, should be paid into the hands of the trustees.

Out of the total income there should be paid yearly to the husband the sum of $1,500, and to the cousin the sum of $1,000. From the income of the one-half of the personalty and the one-half of the realty or the proceeds of its sale, which represents what the charities are permitted to take, there should be applied an amount not exceeding $4,000 for the improvement and care of a cemetery plot.   This must be considered a provision for charitable and benevolent uses (Pers. Prop. Law, § 13-a, added by Laws of 1909, chap. 218, as amd. by Laws of 1911, chap. 430; Real Prop. Law § 114-a, added by Laws of 1909, chap. 218), and hence is payable out of the income of this part of the trust fund.   (*Matter of Braasch,* 206 App. Div. 96.)   Thereafter the income from such halves should be paid to the charitable corporations other than the Home for Incurables until their legacies have been satisfied, or until the death of the life beneficiaries, the trustees having a right in their discretion to pay such legacies out of the principal.   The remainder of such income is then payable to the Home for Incurables as the corporation presumptively entitled to the next eventual estate. (Real Prop. Law, § 63, as amd. by Laws of 1916, chap. 364; *Matter of Harteau,* 204 N. Y. 292; *Matter of Ossman* v. *Von Roemer,* 221 id. 381; *Matter of Kohler,* 231 id. 353; *St. John* v. *Andrews Institute,* 191 id. 254.)

The income of the other half of the real estate or its proceeds, which is the half as to which she is presumed to have died intestate, is payable to her heirs as hereinafter set forth, and the income on the other half of the personalty or so much thereof as remains after the payments hereinbefore set forth, is payable to the decedent's husband.

Upon the death of the two life beneficiaries there is payable out of the half which the trustees have held for the benefit of the

charitable corporations any amount that may still be payable to the charities other than the Home for Incurables, and the balance goes to the Home for Incurables. The other half of the real estate goes to the heirs at law of the decedent as provided in article 3 of the Decedent Estate Law, and the remainder of the personalty is payable to the estate of the decedent's husband, as it is conceded that there was no issue of the marriage between him and the decedent. (Decedent Estate Law, § 98, subd. 3; Id. § 100, as amd. by Laws of 1919, chap. 295.)

It appears that the real estate of which the decedent died seized may be divided into three parts: (a) That which came to her on the part of her mother; (b) that which she purchased herself; and (c) premises at Tremont avenue and Bathgate avenue as to which there is doubt whether they were a gift or a purchase. None of the real property appears to have come to the decedent on the part of the father. The real estate of which she died seized which came to her by devise, gift or descent from her mother, or the proceeds of the sale thereof, subject to the trust aforesaid, descend to the decedent's heirs on the mother's side. So much of the real estate which she herself purchased or the proceeds of its sale, subject likewise to the trust, descend to her heirs on her mother's and father's side. (Decedent Estate Law, § 80, subd. 2; Id. § 88, subd. 4.) The latter includes real estate which she purchased wholly or partly with the proceeds of the sale of real estate which came to her on the part of her mother or father. (*Adams* v. *Anderson*, 23 Misc. 705, 708; Decedent Estate Law, § 80, subds. 1, 2.)

The premises at Tremont and Bathgate avenues were conveyed to the decedent by her mother by a deed which recites a consideration of $100. It is claimed, however, that the same was a gift and hence is to be included in the real estate which came to the decedent on the part of the mother. The fact that the deed recited the consideration mentioned is not decisive of the question. (*Morris* v. *Ward*, 36 N. Y. 587; *Ten Eyck* v. *Witbeck*, 135 id. 40.)

Testimony was offered to show that while the consideration mentioned was the amount stated, the premises were in fact given to the decedent as a gift by her mother. In attempting to prove this, witnesses were called and other evidence introduced subject to motions to strike out thereafter made, upon which decision was reserved. I now strike out the testimony of Louisa Miller upon the ground that the witness was incompetent to testify under section 347 of the Civil Practice Act, and I also strike out the testimony of the decedent given in the transfer tax proceeding as it is doubtful whether the latter was admissible and the other evidence

is sufficient to warrant the conclusion which I reach. The attorney who called the witness in question and introduced the evidence referred to in his brief asked for permission to withdraw the same. I award an exception to the counsel of each party to whom such ruling is adverse.

With reference to the testimony of the attorney who drew the deed, the conversation between him and the decedent was not carried on in confidence, but in a room to which another person had free access. The doors of this room leading into another room and into a hallway in which the other person was, remained open during the conference, the attorney was a witness to the deed and the notary who took the acknowledgment, and he was called as a witness and testified in the transfer tax proceeding on behalf of the decedent.

I conclude, therefore, that the witness was not barred by section 353 of the Civil Practice Act, and that if such section applied, the communication had been disclosed with the consent of the decedent before the witness testified. (*Doheny* v. *Lacy*, 42 App. Div. 218, 232; *Van Alstyne* v. *Smith*, 82 Hun, 382, 384; *Hebbard* v. *Haughian*, 70 N. Y. 54, 61; *Sommer* v. *Oppenheim*, 19 Misc. 605, 612.)

I hold that the real estate in question was a gift, hence came to the decedent on the part of the mother and descends accordingly.

The trust so far as it is for the benefit of the husband of the decedent is not invalid because he is both beneficiary and one of the trustees, for the reason that he is not the sole trustee. (*Robertson* v. *de Brulatour*, 188 N. Y. 301; *Weeks* v. *Frankel*, 197 id. 304, 313.)

By the words " accrued income " in section 4 of paragraph 12 of the will, I believe the decedent meant surplus income after the payments theretofore referred to. It was her intention that the legacies to the charitable corporations there mentioned should be paid out of this surplus income, or in the discretion of the trustees, out of the principal, if this could be done without endangering the payments to the two life beneficiaries. So much of such legacies as had not been paid either out of the income or principal or both, she wished to have paid when the trust came to an end. If this is correct, the provisions do not involve an unlawful accumulation such as is prohibited by section 61 of the Real Property Law and section 16 of the Personal Property Law. (*Phelps' Executor* v. *Pond*, 23 N. Y. 69; *Matter of Kohler*, 193 App. Div. 8; *Ripley* v. *Guaranty Trust Co.*, 165 id. 481; *Matter of Fenton*, 123 Misc. 658; affd., 214 App. Div. 754.)

This construction renders the provisions of the will in question·

valid and hence should be preferred. (*Matter of Hoyt*, 116 App. Div. 217; affd., 189 N. Y. 511; *Equitable Trust Co.* v. *Miller*, 197 App. Div. 391.)

The amounts of these legacies are not subject to any deduction by reason of the fact that the testator has bequeathed more than one-half to charity (*Matter of Title Guarantee & Trust Co.*, 195 N. Y. 339; *Matter of Ham*, 123 Misc. 889; *Matter of Johnston*, 76 id. 391), and in view of the size of the estate, it would appear that there is no danger that the life beneficiaries will suffer if the trustees exercise their discretion and pay the same out of the corpus of the trust fund held for the benefit of the charities.

As the will does not disclose a contrary intention on the part of the testatrix, the general rule applies and the taxes and carrying charges on the real property in which the husband has a life estate are payable by the life tenant out of the income. (*Matter of Wagner*, 132 App. Div. 306; *Clarke* v. *Clarke*, 145 N. Y. 476, 481; *Sweeney* v. *Schoneberger*, 111 Misc. 718; *Wilcox* v. *Quinby*, 73 Hun, 524; *Sage* v. *City of Gloversville*, 43 App. Div. 245.) The taxes on the unimproved real estate are payable out of such real estate and the proceeds of the sale thereof may be applied thereto. (*Spencer* v. *Spencer*, 219 N. Y. 459; amd., 220 id. 654; *Matter of Martens*, 16 Misc. 245.)

The executors managed the real property of the decedent, other than that left to the decedent's husband for life, and one of them collected the rents thereof. In addition to the usual commissions of the executors, one commission amounting to five per cent of the amount of rents collected, may be allowed and no more. (Surrogate's Court Act, § 285; *Matter of Ross*, N. Y. L. J. Jan. 23, 1924; *Matter of Althause*, 122 Misc. 279.) The amount of such commission should be divided between the two executors. It can readily be seen that if it were payable only to the executor who collects the rents and there were a number of executors, confusion might result and loss be sustained by the estate if each of the executors attempted to earn the commission by collecting the rents. The commission may be allowed under the section cited, not only for collecting the rents, but also for managing the real estate (*Matter of Knight*, 124 Misc. 430; *Matter of Beard*, N. Y. L. J. Nov. 11, 1924), and where by consent one of the executors collects the rents, but both manage the real estate, they are, nevertheless, both entitled to the commission on the rents collected unless there is an agreement to the contrary.

The power of sale not having been exercised, and there being no equitable conversion, the executors are not entitled to any commission upon the realty. (Cases cited in *Matter of Seiss*,

119 Misc. 521; *Matter of Greer,* 123 id. 909; *Matter of Taylor,* 121 id. 7.)

The increase in the value of the real estate as to which the decedent is deemed to have died intestate and on so much of the amount going to charity as is represented by real estate, which accrued between the decedent's death and the date of sale, passes to the trustees for the benefit of the persons who will ultimately be entitled to receive the real estate of which the decedent is deemed to have died intestate, or its proceeds, and if there is a loss, such loss must be borne by them. All increase in personalty, after the deduction of the amounts payable therefrom, goes to the trustees for the benefit of the decedent's husband. The provision for the charities can only be given effect to the extent of one-half of the decedent's estate at death, no more, no less. (*Matter of Brooklyn Trust Company, supra; Matter of Seymour, supra; U. S. Trust Co. v. Soher,* 178 N. Y. 442.) The income of the realty and personalty which has accrued in the hands of the executors or will come into their possession pending the setting up of the trust, and which has resulted from the use of property or the proceeds of property that would be in the trust if it had been established, should be delivered over to the trustees and should be disposed of in the same manner as will the income which accrues on the trust estate as hereinbefore stated. (*Matter of Donchian,* N. Y. L. J. June 16, 1926; *Matter of Brown,* 115 Misc. 710.) As the actual amount earned on the share which the trustees will receive for the charities will thus accrue to their benefit, no interest will be allowed upon the principal on the theory that a general legacy has resulted which bears interest from a year after the date of letters. (*Matter of Seymour, supra,* 262; *Matter of Blumenthal,* N. Y. L. J. May 29, 1926.)

In view of the condition of the estate, the amount of vacant realty and the uncertainties of the will, the executors should not be surcharged for the failure to pay the taxes promptly, and no surcharge will be made.

In order to administer this estate properly in view of the effect of section 17 of the Decedent Estate Law, and to set up the trust, it appears to me that the power of sale which the decedent gave to the executors should be exercised by them as to all of the real estate except that which was left for life to the husband of the decedent, as soon as this may reasonably be done, and the decree will so provide. There will be no difficulty in treating the proceeds of the sale as realty where that is necessary in determining the disposition of its income or of the corpus under the statute.

It appears that the sum of $12,500 was deposited by the executors

on account of the State inheritance tax. This amount has been deducted by the executors in arriving at the balance in their hands. When distribution is made, however, they should deduct the amount of such taxes from the shares of the respective beneficiaries and credit them to the estate as they are chargeable against such shares and not against the estate generally.

The objections not hereinbefore disposed of and not withdrawn upon the hearing are dismissed.

Since the proceeding was commenced, an appraiser was appointed upon consent of all of the parties who appeared by counsel upon the hearings, and he has fixed the value of the real estate as of the time of decedent's death. There appears to be no dispute as to the relationship of the various parties, and it should be possible for counsel to agree upon their interests if the matter proceeds as hereinbefore indicated, and such interests will be fixed in the decree. If counsel cannot agree, a hearing may be had upon the settlement of the decree. One bill of costs will be awarded to each party or group of parties which appeared by counsel and filed objections or submitted a brief, and an allowance made to each special guardian. Costs and allowances will be made payable out of that part of the estate as to which the decedent is deemed to have died intestate and apportioned between the personalty and the proceeds of the sale of the realty.

Settle decision and decree accordingly.