In the Matter of the Estate of LEON COHEN, Deceased.*

Surrogate's Court, Kings County, January 5, 1934.

---

* See, also, 150 Misc. 534.

*Harry M. Peyser*, for the State Tax Commission.

*Edward S. Frith*, for the executors.

WINGATE, S. The present proceeding amounts, in substance, to a reargument of the effect, so far as the Transfer Tax Law is concerned, of a gift of a trust remainder to a cemetery corporation for perpetual care of the testator's burial plot.

By the first item of his will testator provided:

" I. I will, order and direct that all of my just debts and funeral expenses be paid out of my estate as soon as conveniently may be after my decease, authorizing and directing that my executors cause a suitable marker for my grave to be installed at an expense not to exceed Two hundred and fifty (250.00) Dollars."

The remainder of the estate was erected into a trust for the lives of his wife and son with a provision that, if the wife predeceased the son, $1,000 of the principal of the trust should be paid to Macphaela Cemetery Association on her death and $3,000 additional on the subsequent death of the son, but if the son predeceased the wife, the entire $4,000 should be paid on her death. The purpose of the gifts was stated in the following language: " The said sums to be held by said Macphaela Cemetery Association in trust to apply the net income thereof to the perpetual care and embellishment of my burial plot and the graves and monuments therein in its Cemetery, my said plot being known as Lot No. 27."

The testator died on January 4, 1926, leaving a gross estate of $31,773.34, from which the transfer tax appraiser has deducted debts of $158.04 and administration expenses, excluding executors' commissions, of $1,639.44, in which were included $445.30 for the undertaker and $250 for a grave marker as directed by the will, giving an aggregate of funeral expenses of $695.30 as allowed deductions.

The appraiser originally reported as taxable the above-noted provision for payment to the cemetery association. An appeal was taken to the surrogate from this determination but was not made the subject of any particularly spirited contest and was sustained, the matter being remitted to the appraiser for elimination of this item of tax. This decision was made on November 27, 1931.

At a considerably later time a motion for reargument was made by the State Tax Commission, which motion was denied by decision dated November 16, 1932, solely on procedural grounds, it being pointed out that since the time to appeal from the order of remission had long since expired, the proper practice to bring the matter on for rehearing would be for the Tax Commission to appeal to the surrogate from the *pro forma* order to be entered upon the appraiser's revised report. This has now been accomplished, wherefore the entire subject-matter of the controversy is presently before the court for decision.

The argument in favor of exemption assumes a dual aspect, *first*, on the ground that the amount directed to be paid to the cemetery association being to a " charitable " or " benevolent " corporation is not taxable by reason of the phraseology of the first sentence of section 221 of the Tax Law; and, *second*, that it is exempt as a part of the funeral expenses of the decedent.

Approaching a consideration of the former contention, it is unquestionable that testamentary directions for payments related to the obsequies of the deceased are " deemed to be for charitable and benevolent uses," according to the express language of section 13-a of the Personal Property Law (*Matter of Arnolt*, 127 Misc. 579, 586; *Matter of Beck*, 130 id. 765, 766; *Matter of Blasius*, 134 id. 753, 755), and it would seem *prima facie* to be a logical conclusion that a corporation which receives a bequest for a charitable use is a " charitable " corporation. Indeed, in *Matter of Braasch* (206 App. Div. 96), where testatrix gave $3,000 to the Lutheran Cemetery for the care of her burial plot, the court held (at p. 101) that this " must be included among the bequests to charitable corporations."

The fallacy in this position in the present connection, however, lies in the obvious fact that cemetery corporations were not included in the legislative connotation of the term " charitable," as used in section 221 of the Tax Law. This appears from the fact that express provision respecting the extent of the exemption to a cemetery corporation is made in the second sentence of the section, in which it is enacted that such an association is exempt from tax only to the extent of " personal property other than money or securities," obviously placing it in a category other than that occupied by the general " charitable " organizations, referred to in the first sentence. Whereas, therefore, it seems obvious that a gift for the upkeep of a burial plot is to be classed as charitable in certain connections, as, for example, in a determination under section 17 of the Decedent Estate Law, it is not such a charitable organization as is given unlimited tax exemption under section 221 of the Tax Law.

Approaching now the second phase of the controversy, there remains for consideration the question as to whether or not a direction for payment such as was here made can receive exemption in whole or in part as a funeral expense.

It is, of course, primary that the only interests which are taxable under the Transfer Tax Law are those portions of the estate which pass to the distributees in beneficial enjoyment from the net estate of the decedent. In arriving at the net distributable estate, one of the first, if not the very first, deductions which is made from the gross assets coming into the hands of the fiduciary is for the funeral expenses of the decedent. (Surr. Ct. Act, § 216; *Matter of Brooks*, FOLEY, S., 119 Misc. 738, 741; affd., 212 App. Div. 868; *Matter of Millward*, 6 Misc. 425, 428; *Matter of Phelps*, 118 id. 405, 406; *Matter of Ogden*, 103 id. 529, 532; *Matter of Smith*, 137 id. 107, 110.) (See, also, *Matter of Computation of Transfer Tax, etc.*, 33 N. Y. St. Dept. Rep. 22, 26.) " Personal property does not pass directly from the deceased to his legatee or next of kin, but all such legatee or next of kin takes is what may be coming to him from the estate on its distribution after settlement. The amount represented by the expenditures of the administrator or the expense of administration never passes to the legatee or next of kin, and, therefore, is not subject to the tax." (*Matter of Gihon*, 169 N. Y. 443, 445.) (See, also, *Matter of Westurn*, 152 id. 93, 103.) Upon any sum, therefore, actually paid or properly payable from the gross estate as a deductible expense, the State is entitled to receive no tax.

A preliminary consideration in the discussion arises, therefore, as to what sorts of payments are properly deductible in this connection. Allowance has been made by the appraiser for the actual undertaking services, in the sum of $445.30, and for a marker for the grave of the decedent to the extent of the $250 directed by him; the testator also directed that upon the deaths of both his wife and son a sum of the then value of $4,000, the present worth of which has not been determined, should be used for the perpetual care of his cemetery plot. Is his desire in this regard to be gratified in a manner similar to that in which the Tax Commission concedes his related wish for the $250 marker is to be satisfied? In other words, is his wish for the upkeep and maintenance of his burial plot to be included as a proper funeral expense?

Even before the amendment of subdivision 3 of section 314 of the Surrogate's Court Act by chapter 139 of the Laws of 1922, these questions must have been answered in the affirmative. (*Matter of Edgerton*, 35 App. Div. 125, 131; *Matter of Vinot*, 7 N. Y. Supp. 517, 518, not otherwise reported; *Matter of Schaaf*, 120 Misc. 292, 294; *Matter of Brundage*, 101 id. 528, 537; affd., *sub nom. Matter of*

*Farmers' Loan & Trust Co.*, 186 App. Div. 722; modfd. on other grounds, 226 N. Y. 691; *Matter of Maverick*, 135 App. Div. 44, 45; affd., 198 N. Y. 618; *Matter of Dougherty*, 64 Misc. 230, 231; *Matter of Meek*, 113 id. 301, 304.)   Since the enactment of that amendment the subject has been placed beyond the realm of controversy, since the statute has been made to read: " the expression ' funeral expenses ' includes suitable church or other services, a burial lot and suitable monumental work erected thereon, and a *reasonable charge or expenditure for the perpetual care of the decedent's burial lot.*"   (Italics not in original.)

It follows that since the decedent is entitled by law to have a reasonable expenditure made for the perpetual care of his burial lot included in his funeral expenses, there remain only two questions for decision in this controversy.   The *first* is one of law, pressed by the State Tax Commission, as to whether the fact that he made an express direction in this regard deprives him of his statutory right; the *second*, of fact, as to whether the sum specified by the testator himself for this purpose is " reasonable."

The Tax Commission advances the somewhat novel thesis that any testamentary direction for payment is taxable, no matter what its purpose or on what state of facts it be predicated.   As authority for this position it cites *Matter of Howell* (255 N. Y. 211), in which it was held that a testamentary provision for a wife, which had been made pursuant to a previous separation agreement to provide for her by will, was taxable.   The unquestionable theoretical soundness of this result may readily be admitted without any resulting concession of the applicability of the involved principle to the case at bar.   The court is unable to perceive in what way this determination advances the statement of legal principles one whit beyond the law as settled many years ago in *Matter of Gould* (156 N. Y. 423), in which it was held (at p. 427) that the fact that the testator was indebted to a legatee did not make tax exempt a legacy to him in satisfaction of the indebtedness.   In both cases a legal obligation existed upon the testator, that of Mr. Howell to make a testamentary gift; that of Mr. Gould to pay a debt.   The Howell obligation to give the legacy inevitably carried with it all of the usual results of a testamentary gift, one of which was a *pro tanto* impost, which, in view of the law to that effect, must have been contemplated by the wife.   Had the agreement in the *Howell* case been that the wife should receive a specified lump sum on testator's death and had the latter attempted to solve this final obligation by a testamentary gift, the case would have been four-square with the *Gould* case, and an election by the wife to take the legacy instead of insisting upon the payment of the debt, would

have produced the identical result. The *Howell* decision merely presents an even more obvious application of the rule of law enunciated in the *Gould* case.

The argument of the Tax Commission that because testator, in the case at bar, expressly specified a certain sum which he obviously considered to be the proper one, for the purpose of perpetual care of his plot, this act transformed into a taxable gift that which would have been merely a properly deductible funeral expense had it been couched in somewhat different terms, appears excessively narrow and legalistic. The pertinent statute (Surr. Ct. Act, § 216) directs that the first moneys from every estate shall be employed in the solution of certain specified obligations, among which is that of adequate " perpetual care of the decedent's burial lot." On basic principles this existing law is read into every will with like effect as if it had been therein incorporated at length (*McCracken* v. *Hayward*, 43 U. S. [2 How.] 608, 613; *Edwards* v. *Kearzey*, 96 id. 595, 601; *People ex rel. City of New York* v. *Nixon*, 229 N. Y. 356, 361; *Matter of Cohen*, 149 Misc. 765), and the addition of a similar express direction by the testator himself can certainly not have the result of canceling the statutory direction. As was said by the court in *Meyer* v. *Cahen* (111 N. Y. 270, 274): " Such a clause is purely a formal one and works no change in .the disposition of the testator's property. The statutes provide that all debts and funeral expenses shall be paid first, and a direction in the will to do what the law requires to be done can throw no material light upon the meaning of the will."

If testator, instead of directing that the sum which he deemed proper for the perpetual care of his plot should be paid at a future time, had directed immediate solution of this statutory obligation, the Tax Commission could, in view of its allowance for the grave marker, have interposed no objection thereto unless it. elected to throw consistency to the winds. Such a direction for postponement is not, however, such a metamorphous thing that it changes its essential nature by the mere lapse of time. In both instances it is a provision for perpetual care of the burial plot, which is permitted by statute and from which no tax exaction is permitted. Any direction for perpetual care contemplates future action, and the possible implied waiver of the testator of the right of such care during the period from the time of his death to those of his wife and son carries with it no deprivation of the similar right which he possesses under the statute to the care throughout the balance of eternity.

In the opinion of the court, *Matter of Maverick* (135 App. Div. 44), which was unanimously affirmed by the Court of Appeals (198

N. Y. 618), is still a controlling authority on this subject and its doctrine is no wise impaired by the decision in *Matter of Howell*, which deals with an essentially different situation.

By reason of the incorporation of the pertinent statute in the will, the testamentary direction for payment for care of the grave was, if not pure surplusage, merely an indication of the state of mind and wish of the testator as to what sum should be expended for the particular purpose and of the time of its payment. Of course, if it be determined that the testator's wishes in this regard exceeded the statutory possibility as to amount, the expression of testamentary desire would have the further effect of an ordinary bequest of the excess, which would possess the same characteristics, including taxability, which inhere in the usual legacy to one who is entitled to receive a testamentary bounty in beneficial enjoyment. The testamentary direction in this regard, therefore, potentially assumes a dual nature, namely, that of an expression of testamentary desire concerning the manner of performance of the statutory obligation, and if, and in so far as, it transcends the statutory direction, of an ordinary bequest.

The ultimate question of the fact and quantum of taxability becomes, therefore, merely a question of the reasonableness of the testamentary provision since it is only to the extent of a "reasonable" amount that the statutory exemption applies. (*Matter of Smallman*, 138 Misc. 889, 893; *Matter of Lanza*, 149 id. 95, 97; *Matter of Randolph*, 146 id. 879, 880; *Matter of Gavey*, 147 id. 332, 335, 336.) (See, also, *Matter of Amarante*, 148 id. 825, 826; *Matter of Larney*, Id. 871, 879.)

Whether or not $4,000, payable upon the death of testator's wife and son, is a reasonable expenditure for this purpose from an estate of the size of the present, is not determinable on the facts which have thus far been adduced by the litigants. The value of that sum as of the date of death of the testator has not been made to appear. Obviously it is only a fractional part of the total, since a sum payable at a future time is presently worth less than one immediately due. (*Hollis* v. *Drew Theological Seminary*, 95 N. Y. 166, 177–180; *Matter of Durand*, 194 id. 477, 488.)

The statute authorizes the expenditure as a tax exempt item only in so far as it is classifiable as a funeral expense of the testator himself. Whereas it would appear an unreasonable construction to hold that this applied merely to the surface of approximately six by three feet immediately above his casket, it is equally absurd to contend that if a decedent of moderate means were buried in a ten-acre lot the words " perpetual care of the decedent's burial lot " contemplated a continuous expenditure for the upkeep and beautifi-

cation of the entire tract. It is essential to any proper decision of the extent and scope of the reasonable care of testator's plot and the consequent allowable expense that the court be fully informed of the pertinent facts in regard thereto and of the relation of the particular spot of this decedent's burial to the adjacent land of which he was the owner. No evidence of this type has been adduced and in its absence no intelligent result can be attained.

It would be possible for the court again to remit the entire matter to the appraiser for the taking of further testimony and report thereon, but in view of the unreasonably long time during which this controversy has been pending, the court will itself take evidence on these questions, for which purpose the matter may be brought on for hearing by either party on five days' notice to the other.

Proceed accordingly.